# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| Leo Caballero individually, and as Co-representative of the Estate of Pedro Jaciel Caballero (deceased), and as Co-Representative of the Estate of Emilia Vales (deceased); Yolanda Elizabeth Medrano Villa, individually, and as Co-Representative of the Estate of Pedro Jaciel Caballero (deceased); Cesar Caballero individually, and as Representative of the Estates of Cesar Isaac Caballero (deceased) and Luz Lizeth Galvan (deceased), and as Co-Representative of the Estate of Emilia Vales (deceased); Osmar Caballero individually, and Solidad Avila, individually and as Co-Representative of the Estate of Salma Guadalupe Caballero (deceased), | : : : : : : : : : : : : : : : : |
| Plaintiffs, | : : |
| v. | : C.A. No. N11C-09-170 JRJ : |
| Ford Motor Company, Michelin Americas Research & Development, Michelin NA, Inc., and Michelin France, | : : : : |
| Defendants. | : : |

## OPINION

**Upon Defendant Ford Motor Company's Motion for Partial Summary
Judgment:
GRANTED**

Submitted:  December 6, 2013
Decided:  June 24, 2014

Timothy E. Lengkeek, Esquire, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, DE; Richard L. Denney, Esquire, Denney & Barrett, P.C., 870 Cooperfield Drive, Norman, OK 73072; Attorneys for Plaintiffs.

Christian J. Singewald, Esquire, Timothy S. Martin, Esquire, White & Williams, LLP, 824 North Market Street, Suite 902, Wilmington, DE; Attorneys for Defendant Ford Motor Company.

**JURDEN, J.**

## I.    INTRODUCTION

Before the Court is defendant Ford Motor Company's ("Defendant") Motion for Partial Summary Judgment on the plaintiffs' ("Plaintiffs") punitive damages claim, filed on August 30, 2013.[1]  For the reasons explained below, Defendant's motion is **GRANTED.**

## II.    FACTUAL AND PROCEDURAL CONTEXT

This lawsuit arises from a single-vehicle accident that occurred on May 3, 2010, on a Federal Mexican highway ("Highway 40") in the State of Durango, Mexico.[2]  Plaintiff Leo Caballero ("Leo") was the driver of the 2000 Ford Explorer ("Explorer") involved in the accident.[3] The driver's side rear tire allegedly suffered a tread separation which caused Leo to lose control of the vehicle.[4] As a result, the Explorer rolled over numerous times, allegedly causing the seat-belts to fail and the roof of the vehicle to crush the other occupants inside the vehicle.[5] Plaintiffs Leo and Cesar Ivan Caballero ("Cesar") were injured, but survived the accident, however, Salma Caballero ("Salma"), Emilia Vallez ("Emilia"), Luz Lizeth Galvan

---

[1] Def. Ford Motor Co.'s Mot. for Partial Summ. J. on Pls.' Punitive Damages Claim ("Def.'s Mot.") (Trans. Id. 53975790).   Plaintiffs are Leo Caballero, individually, and as co-representative of the Estate of Pedro Jaciel Caballero and as Co-Representative of the Estate of Emilia Vales; Yolanda Elizabeth Medrano Villa, individually, and as co-representative of the Estate of Pedro Jaciel Caballero; Cesar Caballero, individually, and as Representative of the Estates of Cesar Isaac Caballero and Luz Lizeth Galvan, and as co-representative of the Estate of Emilia Vales; Osmar Caballero, individually; and Solidad Avila, individually, and as co-representative of the Estate of Salma Guadalupe Caballero.
[2] Def.'s Mot. 2.
[3] *Id*.
[4] Compl. ¶ 5.
[5] *Id*..

("Luz"), Cesar Isaac Caballero ("Cesar Isaac"), and Pedro Jaciel Caballero ("Pedro") (collectively "Decedents") did not survive.

Plaintiffs are Mexican citizens, but do not reside in the State of Durango.[6] The Explorer was sold to its first owner in Missouri, and Leo purchased it in Kansas.[7] Defendant is a Delaware corporation, with its principal place of business in Dearborn, Michigan.[8] Defendant manufactured the Explorer involved in the accident.[9]

Plaintiffs assert claims of negligence, strict liability, and post-sale failure to warn,[10] and seek punitive damages with respect to Defendant's allegedly defective design and marketing of the Explorer.[11] Defendant contends that Plaintiffs are not entitled to punitive damages because the issue of punitive damages is governed by Michigan law, and Michigan law does not recognize punitive damages.[12] In the alternative, Defendant contends that Mexican law (State of Durango) is applicable to Plaintiffs' punitive damages claim.[13] According to Defendant, the vehicle in question was primarily designed and developed in Michigan, the significant decisions concerning its design and development occurred in Michigan, and the

---

[6] Pls.' S. Br. 13.
[7] Pls.' Resp. 2-3.
[8] Compl. ¶ 3.
[9] *Id.* ¶¶ 10-31.
[10] *Id.* ¶¶ 36-40.
[11] Def.'s S. Br. 1-7.
[12] *Id.* 9.
[13] *Id.*

4

primary decisions regarding testing and the manufacturing process of the vehicle also occurred in Michigan.[14]

In response, Plaintiffs assert that [t]he overwhelming majority of vehicles [that] Defendant designs and manufactures are sold outside . . . of Michigan.[15] Plaintiffs maintain that both Delaware and Missouri have a significant interest in this dispute: Delaware, because it is Defendant's state of incorporation and because Defendant does business in the state; Missouri, because it is where the Explorer was manufactured and where it was placed "in the stream of commerce."[16]

### III. DISCUSSION

Pursuant to "general conflict of laws principles, the forum court will apply its own conflict of law rules to determine the governing law in a case."[17] Delaware courts conduct a two-part inquiry to determine the applicable law.[18] First, the Court determines if there is an actual conflict.[19] "In determining whether there is an actual conflict, Delaware state courts . . . answer a single and simple query: does

---

[14] Def.'s Mot., Aff. of William Ballard, Exh. D ¶¶ 5-8.
[15] *See* Pls.' Resp. 2.
[16] Pls.' Resp. to Def.'s S. Br. 2.
[17] *Pallano v. AES Corp.*, 2011 WL 2803365, at *8 (Del. Super. July 15, 2011) (citing *Lumb v. Cooper*, 266 A.2d 196 (Del. Super. 1970)).
[18] *Laugelle v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164, at *2 (Del. Super. Oct. 1, 2013).
[19] *Id.*; *see Deuley v. DynCorp. Int'l,* 8 A.3d 1156, 1161 (Del. 2010).

application of the competing laws yield the same result?"[20]  In the event of an actual conflict of law, Delaware courts apply the most significant relationship test from Section 145 ("Section 145") of the Restatement (Second) Conflict of Laws ("Restatement").[21]

"Choice-of-law determinations must be made as to each issue when presented, not to the case as a whole."[22]  Plaintiffs argue that Delaware law, or in the alternative, the law of the state where the relevant conduct occurred (Michigan law for design issues; Missouri law for manufacturing and marketing issues) should apply.[23]  Defendant contends Michigan law, or in the alternative, Mexican law (State of Durango) is applicable.[24]

The Court finds that an actual conflict exists between Delaware law and Michigan law on the issue of punitive damages.  It is undisputed that applying Delaware law or Michigan law to Plaintiffs' punitive damages claim will not yield the same results.  While Michigan allows for the imposition of "exemplary

---

[20] *Laugelle*, 2013 WL 5460164, at *2.
[21] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46-47 (Del. 1991).  The Restatement reads:  "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."  Restatement (Second) of Conflicts of Law § 145(1) (1971).
[22] *Laugelle*, 2013 WL 5460164, at *3; ( citing Restatement (Second) of Conflicts of Law § 145(1) (1971)).
[23] Pls.' S. Br. 1-2.
[24] Def.'s S. Br. 1.

damages ,"[25] "[i]t is well established that generally only compensatory damages are available in Michigan and that punitive sanctions may not be imposed."[26] In contrast, Delaware law permits the imposition of punitive damages.[27]

Because there is an actual conflict of law, the Court must consider the second part of the choice of law analysis. "Pursuant to Section 145 of the Restatement (Second) of Conflict of Laws, the local law of the state which 'has the most significant relationship to the occurrence and the parties under the principles stated in Section 6 will govern the rights of litigants in a tort suit."[28]

The Court considers the following factors listed in Section 145 when determining the law applicable to an issue:

    (1) the place where the injury occurred;

    (2) the place where the conduct causing the injury occurred;

    (3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and

    (4) the place where the relationship, if any, between the parties is centered.[29]

---

[25] *Ray v. City of Detroit*, 242 N.W. 2d 494, 495 (Mich. Ct. App. 1976) ("[I]n Michigan, exemplary damages which are compensatory in nature are allowable. [Exemplary damages] are never allowed for the purpose of punishing or making an example of a defendant).

[26] *McAuley v. Gen. Motors Corp.*, 578 N.W. 2d 282, 285 (Mich. 1998).

[27] *Porter v. Turner*, 954 A.2d 308, (Del. 2008) (citing *Cloroben Chem. Corp. v. Comegys*, 464 A.2d 887, 891 (Del. 1983).

[28] *Travelers*, 594 A.2d at 47 (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)).

[29] Restatement (Second) of Conflicts of Laws § 145(2) (1971).

It is not a matter of "simply add[ing] up the interests of the jurisdictions and apply[ing] the law of the jurisdiction with the most contacts."[30] Rather, the Court evaluates these contacts "according to their relative importance with respect to the particular issue."[31] The contacts listed in Section 145 must be weighed in light of the following policy considerations, as set forth in Section 6 of the Restatement ("Section 6"):

(1) the needs of the interstate and international systems;

(2) the relevant policies of the forum;

(3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(4) the protection of justified expectations;

(5) the basic policies underlying the particular field of law;

(6) certainty, predictability and uniformity of result; and

(7) ease in the determination and application of the law to be applied.[32]

The Restatement ("Section 146") directs the Court to apply the law of the state where the injury occurred in a personal injury action, unless "some other state has a more significant relationship under the principles stated in [Section] 6 to the

---

[30] *Peña v. Cooper Tire & Rubber Co.,* 2010 WL 1511709, at *2 (Del. Super. Apr. 15, 2010).
[31] Restatement (Second) of Conflict of Laws § 145 (1971).
[32] *Id.* § 6.

occurrence and the parties, in which event the local law of the other state will be applied."[33]

## A. Michigan Law is Applicable to Plaintiffs' Punitive Damages Claim

### 1. Restatement Section 145 Analysis

"The most significant relationship test is a flexible one and requires each case to be decided on its own facts."[34] Mexico is the place of injury. The alleged misconduct occurred in Michigan. Plaintiffs are Mexican nationals residing outside of the State of Durango. Defendant is Delaware corporation with its principle place of business in Michigan. The Court finds that Michigan has the most significant relationship to the occurrence.

### i. Place of Injury

"Although the 'place of injury' factor is often determinative of the most significant relationship, this is not the case when the injury in question is fortuitous."[35] "The place of injury is considered to be fortuitous when there is no other significant contact with the site other than the injury itself."[36] When the

---

[33] *Id.* § 146; *see Rasmussen v. Uniroyal Goodrich Tire Co.,* 1995 WL 945556, at *2 (Del. Super. Apr. 18, 1995).

[34] *Peña*, 2010 WL 1511709, at *1 (quoting *Travelers*, 594 A.2d at 48).

[35] *Cervantes v. Bridgestone/Firestone N.A. Tire Co.*, 2010 WL 431788, at *2 (Del. Super. Aug. 14, 2008) (citing Restatement (Second) Conflict of Laws § 145, cmt. e (1971)).

[36] *Id.* (citing *Thompson v. Reinco*, 2004 WL 1426971, at *1); *cf. Ortega v. Yokohama Corp. N.Am.*, 2010 WL 1534044, at *2 (Del. Super. Mar. 31, 2010) (finding the place of injury was fortuitous when the only connection to the Mexican State of Michoacán was that the accident occurred there); *Peña*, 2010 WL 1511709, at *2 (finding that the place of injury, Chihuahua, Mexico, was not fortuitous because the plaintiffs resided there).

location of the injury bears little relation to the occurrence or the parties, that factor becomes less persuasive when selecting the applicable law."[37] Generally, the law of "the state whose interests are most deeply affected"[38] should be applied.[39]

Durango was the site of the accident, but that is its sole connection to this case. The Plaintiffs neither reside in Durango, nor allege that any of Defendant's culpable conduct occurred there. The place of injury is fortuitous.

### ii. Place where the Conduct that Caused the Injury Occurred

"Punitive damages are intended to serve a dual purpose –to punish the wrongdoer for his outrageous conduct and to deter him and others from similar conduct."[40] Choice of law considerations generally favor applying the law of the state where the conduct that caused the injury occurred for punitive damages and the law of the state where the injury occurred for compensatory damages.[41]

Plaintiffs allege that Defendant concealed defects and misled the public about the Explorer's safety through, *inter alia*, its design, marketing, advertising, and management decisions.[42] Most, if not all, of the alleged misconduct would have occurred at Defendant's headquarters and principal place of business in

---

[37] *Cervantes*, 2010 WL 43188, at *2 (citing *Rasmussen*, 1995 WL 945556).
[38] *Id.*
[39] Restatement (Second) of Conflict of Laws § 6, cmt. f (1971).
[40] *Strauss v. Biggs*, 525 A.2d 992, 1000 (Del. 1987).
[41] *See* Restatement (Second) of Conflict of Laws § 145, cmt. c-e ("[W]hen the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance.").
[42] Compl. at ¶¶ 37-39.

Michigan.[43] According to Plaintiffs, when Defendant's engineers recommended making the Explorer more resistant to rollover, Defendant's "management rejected the recommendations because they would have caused a postponement of the production date."[44] Additionally, Plaintiffs contend that the "decisions of [Defendant's] management at all times material to the *design and manufacture* of the Explorer in this case demonstrate a pattern of favoring profit . . . despite knowledge of both a deadly rollover defect and [the availability of] a simple [and] relative[ly] inexpensive way to fix it"[45]

Although Michigan, Delaware, Missouri, and the Mexican State of Durango may have a significant interest in this case, the majority of the alleged misconduct occurred in Michigan. The Explorer was designed in Michigan and, as Plaintiffs themselves point out, Defendant's management in Michigan made the decisions regarding the manufacture, development, and testing of the Explorer. These decisions clearly would have been made at the place of "ultimate decision-making" – Defendant's headquarters and principal place of business in Dearborn, Michigan.

In *Ortega v. Yokohama Corp. of North America*, this Court found that Virginia had the most significant relationship to the occurrence where the place of injury

---

[43] *See Cervantes*, 2008 WL 3522442, at *1 ("If this misconduct [failure to warn consumer of allegedly known dangers] is determined to have occurred, it is certain that it would have occurred primarily at Ford's Michigan Headquarters . . . [s]ince the allegations of misconduct focus on the design and not [the] fabrication of the vehicle in questions, Michigan law must be applied with respect to punitive damages.").

[44] Pls.' Resp., App. at 5.

[45] *Id*. at 6 (emphasis added).

was fortuitous and where the tire at issue was designed and manufactured in Virginia.[46] Similarly, in *Artega v. Bell Helicopter Textron, Inc.*, this Court recently held that regardless of the fact that the defendant was a Delaware corporation, Texas had the most significant relationship to the issues, in large part, because the relevant part was designed, manufactured, and tested in Texas.[47]

### iii. Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

Defendant is a global company that operates in many states within the United States. It is not uncommon for a global corporation to be incorporated in Delaware and have its principal place of business in another state. While the place of incorporation is a factor in determining the most significant relationship, a corporation's principal place of business is a more significant contact.[48] While Delaware is Defendant's state of incorporation and Defendant does significant business here,[49] it is Michigan, the location of Defendant's principal place of business and world headquarters, that has an interest in preventing misconduct

---

[46] 2010 WL 1534044, at *3-4.

[47] *Artega v. Bell Helicopter Textron, Inc.*, C.A. No. N12C-05-008 at 11-12 (Del. Super. June 10, 2014).

[48] *See* Restatement (Second) of Conflict of Laws § 145, cmt. e (1971) ("At least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place.").

[49] *See Ford Motor Co. v. Dir. of Revenue*, 2008 WL 2058522, at *1 (Del. Super. Apr. 25, 2008) ("From January 1999 until October 2002, Ford sold vehicles to automotive dealers in Delaware with a wholesale value of $727,440,438").

occurring in the state, and in determining the nature of the punishment it will impose on corporations within its borders. [50]

### iv. The Place where the Relationship Between the Parties is Centered

To the extent the relationship between the parties in this case can be said to have been centered anywhere, it is centered in Michigan. The vehicle was designed in Michigan and manufactured and sold to the first buyer in Missouri, purchased by Leo in Kansas and then exported to Mexico, where the accident occurred. Because most of the alleged wrongful conduct regarding the Explorer occurred in Michigan, the Court finds that the parties' relationship is centered in Michigan.

### 2. Restatement § 6 Policy Considerations

After weighing each of the aforementioned contacts in light of the principles set forth in Section 6 of the *Restatement*, the Court finds that Michigan has the most significant relationship with respect to the issue of punitive damages in this case. "In determining a question of choice of law, the forum should give consideration not only to its own relevant policies . . . but also to the relevant policies of all other interested states."[51]

---

[50] *See Aguirre Cruz v. Ford Motor Co.*, 435 F.Supp.2d at 701, 707-08 (finding that the most significant relationship on the issue of punitive damages was Michigan, where Ford, the defendant in the case, had its principle place of business and the alleged misconduct would have occurred.).

[51] Restatement (Second) of Conflict of Laws § 6, cmt. f. (1971).

Here, Delaware is the forum state and is an interested state, because it is the Defendant's place of incorporation. Delaware has a legitimate interest in governing the rights of those corporations that have chosen to avail itself of the laws of the State.[52] In Delaware, an assessment of punitive damages implicates other societal policies, it is not aimed at correcting private wrongs.[53] An award of punitive damages is gratuitous and must subsist on grounds other than making the plaintiff "whole."[54]

Michigan is an interested state because it is where the Defendant's principal place of business is located and where the management decisions were made with regard to the Explorer's design. The relative interests of Michigan and Delaware are in conflict with regard to punitive damages. Delaware's interest in this case is mainly dependent on it being the state of incorporation, which, at least in this case, is not as relevant in a choice of law analysis when compared to the place of conduct and principal place of business.[55]

---

[52] *See In re Topps Co. S'holders Litigation*, 924 A.2d 951, 958 (Del. Ch. May 5, 2007) ("As the United States Supreme Court, the Delaware Supreme Court . . . all recognize, a state has a compelling interest in ensuring the consistent interpretation and enforcement of its corporation law").

[53] *Jardel Co. v. Hughes*, 523 A.2d 518, 528 (Del. 1987).

[54] *Id.*

[55] *See* Restatement (Second) of Conflict of Laws § 145, cmt. e (1971) ("At least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place.").

Michigan's interest is the most deeply affected. "Michigan has a predominant interest in protecting the financial integrity of corporations who conduct substantial business within its borders,"[56] and by not imposing punitive damages, "hopes to promote corporate migration to Michigan [b]y insulating those companies."[57] "If Michigan did not provide such protection to corporations, such corporations, [like Defendant], might refuse to locate and conduct any business in their state."[58]

Applying Michigan law rather than Delaware law will foster "certainty, predictability, and uniformity of result"[59] in the determination of the law to be applied. In *Cervantes v. Bridgestone/Firestone North American Tire Co.,*[60] the defendant similarly sought to have Michigan law applied with regard to plaintiff's claim for punitive damages. The Court held that "since the allegations of misconduct focus on the design and not [the] fabrication of the vehicle in question, Michigan law must be applied with respect to punitive damages."[61]

Michigan has the most significant interest in applying its law regarding punitive damages; therefore, Michigan law will govern the issue of punitive damages in this case. Because Michigan law does not provide for punitive

---

[56] *Aguirre Cruz*, 435 F.Supp.2d at 705.
[57] *Id.*
[58] *Kelly*, 933 F.Supp at 471; *see also Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 82 A.3d 1 (Del. 2012).
[59] Restatement (Second) of Conflict of Laws § 6(2)(f) (1971).
[60] 2008 WL 3522442, at *1.
[61] *Id.*

damages,[62] Defendant's Motion for Partial Summary Judgment on this issue is **GRANTED.**

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is **GRANTED**; Plaintiffs' claim for punitive damages is **DISMISSED.**

**IT IS SO ORDERED.**

_____
Jan R. Jurden, Judge

---

[62] *McAuley*, 578 N.W.2d at 285.