**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Stock Insurance Company, Plaintiff,**

**v.**

**RLC CORP., a Delaware corporation, Rollins Leasing Corp., a Delaware corporation, and RLC Corp. Voluntary Employees Beneficiary Association and Trust, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted Sept. 24, 1981.

Decided June 22, 1982.

Jack B. Jacobs and David C. McBride of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

James T. McKinstry, E. N. Carpenter, II, Jesse A. Finkelstein of Richards, Layton & Finger, Wilmington, Thomas A. Masterson (argued) of Morgan, Lewis & Bockius, Philadelphia, Pa., and Kenneth B. Wright of Morgan, Lewis & Bockius, Los Angeles, Cal., for defendants.

LONGOBARDI, Vice Chancellor.*

After the filing of this action for declaratory judgment, the Defendants filed this motion to stay these proceedings in favor of an action they filed in the California Superior Court against the Plaintiff and two other insurers.

RLC Corp. ("RLC"), a Delaware corporation, Rollins Leasing Corp. ("Rollins Leasing"), a subsidiary of RLC and a Delaware corporation doing business in California, and the RLC Corp. Voluntary Employees Beneficiary Association and Trust ("VEBA"), an associated employee benefit plan which administers and pays health benefits to the employees of certain participating employers, including Rollins Leasing, are "named insured" under a policy of fiduciary insurance ("the Policy") issued by National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a Pennsylvania corporation with its principal office in New York, New York, effective May 1, 1975. The Policy was obtained through Johnson & Higgins Insurance Brokers and Employee Benefit Plan Consultants in Wilmington, Delaware to meet the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). Under the Policy, National Union was obligated to pay "... all sums which the insured shall become legally obligated to pay as loss because of any Breach of Fiduciary duty .... arising out of the Insured's activity as a fiduciary of [VEBA] ...." "Breach of fiduciary duty" is defined by the Policy to mean "... the violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto with respect to [VEBA]." Additionally, National Union was obligated to "[d]efend any action or suit against the Insured alleging a Breach of Fiduciary Duty, even if such action or suit is groundless, false or fraudulent."

National Union filed its original complaint on September 8, 1980 seeking a declaratory judgment that the Policy did not cover claims arising out of, and that National Union had no obligation to defend against, a lawsuit pending in the Superior Court of California entitled *Walter Wayte, Sr., et al. v. RLC Corp.*, C.A. No. C137010 ("Wayte I"). *Wayte I* was an action that had been filed in September, 1975, alleging the wrongful denial of Defendants RLC, Rollins Leasing and VEBA of medical benefits to Walter Wayte, Jr., the paraplegic adult son of Walter Wayte, Sr., and the wrongful termination of Wayte, Sr.'s employment with Rollins Leasing. In addition, the complaint alleged breach of contract, fraudulent misrepresentation, fraud in handling the Wayte claim, breach of good faith in handling the claim and intentional infliction of emotional distress. The Wayte complaint sought not only reasonable amounts for medical care covered by VEBA but general and punitive damages. The underlying administrative claim for these medical benefits was made in August, 1974. A final denial of the medical claim was made by the Administration Committee of VEBA on February 20, 1975. Ingall W. Bull, Jr., Esquire, Wayte's attorney, wrote

---

* By special assignment to Superior Court pursuant to *Del.Const.* Art. IV, § 13(2).

to James Burns, RLC's Manager of Corporate Insurance in April and June, 1975, intimating imminent legal action. *Wayte I* was filed in September, 1975, after no response was made to these letters and after Wayte, Sr. was fired without explanation in August, 1975. RLC, Rollins Leasing and VEBA handled the case as a routine claim until March 12, 1979, when Wayte's attorney filed a Statement of Damages demanding compensatory and punitive damages in excess of $5,000,000.

RLC gave National Union notice of *Wayte I* in July, 1979. Within a month National Union "denied the request, demand or claim of RLC Corp. to extend coverage to and take over the defense of the Wayte claims because such claims were not first made during the policy period; such claims did not accuse RLC Corporation of a violation of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974; RLC Corporation failed to comply with its contractual obligations to give to National Union notice of the Wayte claim as soon as practicable in writing; the Pension Trust Liability Policy No. 1177146 issued by National Union did/does not provide coverage to the extent that the Wayte claim seeks punitive damages or damages based upon fraud, breach of contract and infliction of emotional distress." Plaintiff's Answers to Defendant's Second Set of Interrogatories, Question # 18. Despite attempts by Defendants to sway National Union's position, it persistently refused to provide coverage in *Wayte I.* Finally, on September 8, 1980, National Union filed this action for Declaratory Judgment in the Superior Court of the State of Delaware.

On October 6, 1980, RLC (the only insured originally sued) filed its answer to National Union's complaint denying all material allegations and alleging the existence of policy coverage. During October and November, 1980, Interrogatories and Requests for Production of Documents were propounded by both sides. It was during this "first round" of discovery in the declaratory judgment action that *Wayte I* went to trial in California with the Defendants providing their own defense. The trial began on September 25, 1980, and ended on November 17, 1980. The jury awarded the Waytes $2,300,000 in compensatory and punitive damages ($1,500,000 of the verdict represented punitive damages) against RLC, Rollins Leasing and VEBA. (This verdict was subsequently reduced by way of post-trial remittitur to slightly over $1,000,-000.). The verdict was apparently the result of the application of a unique California law creating a tort for a wrongful refusal to pay a claim.

On December 4, 1980, the Waytes (plaintiffs in the California Superior Court action) filed a second action in the United States District Court for the Central District of California entitled *Walter F. Wayte, Jr., et al. v. Rollins Leasing Corporation, et al.,* No. 80–5401 Kn(Gx), ("Wayte II"). *Wayte II* is based on and grows out of the same alleged wrongful denial of benefits that formed the basis of the *Wayte I* complaint. The principal differences are that the federal court complaint alleges certain federal statutory causes of action ("ERISA").[1] In addition, certain of the common law causes of action from those in *Wayte I* are characterized somewhat differently. Once again, Defendants took the position that the Policy covered the claims alleged in *Wayte II* while National Union maintained that no coverage exists. National Union, however, agreed to defend its insureds in that action but under reservation of rights.

On or about December 19, 1980, Rollins Leasing and VEBA commenced an action in the California Superior Court against all three of their insurance companies to recover damages resulting from the insurers' alleged breach of contractual obligations, tortious breach of the implied covenant of good faith and fair dealing and violation of California's Unfair Practices Act as to both

---

1. The ERISA claims are for failure to inform Wayte of the reasons for the denial of benefits in violation of 29 *U.S.C.* § 1132 and for wrongful termination motivated because of Wayte's contesting the claim in violation of 29 *U.S.C.* § 1140.

*Wayte I* and *Wayte II.* On January 29, 1981, Plaintiffs filed their First Amended Complaint in California seeking not only compensatory damages but also punitive damages. The parties stipulated that while the motion to stay the Delaware declaratory judgment claim was being briefed and decided, National Union was not required to respond to or answer this California suit.

On the previous day, January 28, 1981, National Union filed a motion to amend its Delaware declaratory judgment complaint primarily to set forth post-complaint occurrences, add VEBA and Rollins Leasing as Defendants and to obtain declaratory relief with respect to Wayte II based on the same grounds of noncoverage as *Wayte I.* RLC refused to consent to National Union's Motion to Amend. As a result, National Union's counsel renoticed its motion for February 5, 1981 which was later rescheduled to February 18, 1981.

On February 17, 1981 the day before the hearing on National Union's Motion to Amend, RLC filed a Notice of this motion to stay and scheduled its presentation the next day. The grounds for this motion were that the declaratory judgment action should be stayed in favor of the pending action that RLC, Rollins Leasing and VEBA filed in the California Superior Court against National Union and their other insurers, Protective Insurance Company ("Protective") and the Aetna Casualty and Surety Company ("Aetna"). In support of its motion, Defendant RLC contends that the stay of the Delaware proceedings would "avoid duplicative litigation, serve the interests of justice and promote efficient judicial administration." (Defendant's Motion to Stay All Further Proceedings, Paragraph 3). At the in-chambers conference/hearing on these two motions, this Court granted National Union's Motion to Amend its complaint and imposed an immediate temporary stay on the proceedings in this Court pending briefing and the Court's determination of Defendant's Motion to

Stay.[2] On March 4, 1981, Defendants filed a Motion to Continue the Stay of All Further Proceedings, *i.e.*, making the February 20, 1981 Order permanent. This is the Court's decision on that Motion to Stay.

The Court notes that since oral argument, the California Superior Court on September 29, 1981, sustained demurrers filed by Aetna and Protective to Defendants' Amended Complaint. In effect, this grants for the second time, Aetna's and Protective's Motions to Dismiss the California Complaint as it pertains to them. As part of this demurrer, Defendants (Plaintiffs in that case) were given leave to amend the complaint a second time only after the pending appeal in the underlying *Wayte I* action.

■■■■ "There is no hard and fast rule applied in Delaware to either granting or denying a stay of prosecution of a Delaware action by reason of the pendency of a similar action in another jurisdiction." *Fenix & Scisson, Inc. v. Underground Storage, Inc.,* Del.Super., 262 A.2d 260 (1970). Even an action filed first in time may be stayed to permit the prosecution of a subsequent action filed in another forum. *General Foods Corporation v. Cryo-Maid, Inc.,* Del.Supr., 198 A.2d 681, 683 (1964). The Motion to Stay is not unlike a motion to dismiss based upon the doctrine of *forum non conveniens.* The Supreme Court in *McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co.,* Del. Supr., 263 A.2d 281, 284 (1970) "reaffirmed its holdings in prior cases that the established rules of *forum non conveniens* are to be applied for granting a stay where '(1) no other action is pending elsewhere between the same parties involving the same issues, or (2) such other pending action was filed subsequently to the Delaware action.'" *Fast Foodmakers, Inc. v. Greisler,* Del.Super., 290 A.2d 1, 2–3 (1972). Where there is no prior action in another forum and the rules of *forum non conveniens* are being applied, the Court's discretion in granting the stay is sparingly exercised. *Fast Foodmakers, Inc. v. Greisler, id.; Boston VLCC*

---

**2.** This stay excepted the actual amendment of the Complaint and service of process upon the additional Defendants named in the Amended Complaint. In accordance with the immediate stay, the additional Defendants were not required to answer the Amended Complaint.

*Tankers, Etc. v. Bethlehem Steel,* Del.Super., 415 A.2d 492, 494 (1980). When another case has been filed, the Court's discretion is freely exercised in favor of staying the subsequently filed case. *McWane Cast Iron P. Corp. v. McDowell-Wellman E. Co.,* 263 A.2d at 281, n.2.

 In determining whether a Court should grant a motion to stay when it is akin to a motion for a dismissal, it is incumbent upon the Court in its discretion to weigh the various factors presented and determine fairly, in light of all the circumstances, where the controversy can best and most economically and expeditiously be determined. *Fenix & Scisson, Inc. v. Underground Storage, Inc.,* 262 A.2d 260 (citing *General Foods Corporation v. Cryo-Maid, Inc.,* 198 A.2d 681). *See also, Boston VLCC Tankers, Etc. v. Bethlehem Steel,* 415 A.2d 492. The factors to be considered in determining the motion to stay based on the *forum non conveniens* doctrine are as follows:

(1) The applicability of Delaware law;

(2) The relative ease of access to proof;

(3) The availability of compulsory process for witnesses;

(4) Whether a similar action in another jurisdiction is pending;

(5) All other practical problems that would make the trial of the case easy, expeditious and inexpensive.

*Boston VLCC Tankers, Etc. v. Bethlehem Steel,* 415 A.2d 492; *Fast Foodmakers, Inc. v. Greisler,* 290 A.2d 1; *Fenix & Scisson, Inc. v. Underground Storage, Inc.,* 262 A.2d at 263; *General Foods Corporation v. Cryo-Maid, Inc.,* 198 A.2d at 684; *Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967).

The Court turns now to a discussion of this applicable criteria and the facts and circumstances submitted as grounds for granting the stay.

## I. The Applicability of Delaware Law.

 The Defendants assert that California Law rather than Delaware law is applicable to most of the substantive issues in its dispute with Plaintiff. The key issue between the parties, common to both lawsuits, is whether there is coverage under the National Union Policy for the claims made by the Waytes against RLC. The determination of coverage and the underlying obligations if there is coverage is contractual and exists because of the agreement made by National Union with RLC. According to the traditional choice of law guidelines followed by the Delaware courts, all issues pertaining to "... the construction and validity of a contract is governed by the law of the place where it is made or the place of contracting." *Harris v. New York Life Ins. Co.,* Del.Ch., 33 A.2d 154, 157 (1943).

Issues relating to the performance of the agreement are resolved pursuant to the application of the laws of the jurisdiction in which the contract was performed. *Wilmington Trust Company v. Pennsylvania Company,* Del.Supr., 172 A.2d 63, 67 (1961). The modern approach indicates that the laws of the jurisdiction which had the most significant relationship to the transaction and parties would control the substantive legal questions. Restatement 2d, *Conflict of Laws* § 188; *Oliver B. Cannon and Son v. Dorr-Oliver,* Del.Supr., 394 A.2d 1160 (1978); *Henkels & McCoy International, Inc., et al v. Puerto Rico Telephone Company,* Del.Super., C.A. No. 80C–MR–33 (Longobardi, J., September 5, 1980). Application of the traditional or modern approach leads to the conclusion that Delaware law applies to the substantive legal questions involved in this Declaratory Judgment suit.

The insurance contract in question was clearly made in Delaware. The Policy was negotiated between RLC officials in its Wilmington, Delaware, office, Johnson & Higgins of Delaware, Inc., RLC's insurance broker in Wilmington, Delaware, and National Union at its principal office in New York City. National Union, a Pennsylvania corporation, issued the policy to RLC, a Delaware corporation, and had Johnson & Higgins physically deliver the policy to RLC in Delaware. Additionally, the facts relevant to the underlying claim itself occurred in Delaware. The ERISA trusts covered by

this policy were administered by RLC in Delaware. Any alleged breach of fiduciary duty by RLC in its handling of the underlying Wayte claim therefore would have occurred in Delaware. Plaintiff's executives made the decision to deny the Wayte claim while in the State of Delaware. *Compare, Melville v. American Home Assur. Co.*, 3rd Cir., 584 F.2d 1306 (1978). National Union's decision not to defend the two California cases was not made in California, rather it was made in New York. Therefore, the Defendants' argument that California law would govern its California tort claims against National Union is without merit because the alleged tort did not occur in California. Under the rule of *lex loci delicti*, California substantive law would not even apply to these common law torts. *Friday v. Smoot*, Del.Supr., 211 A.2d 594 (1965).[3] California is largely a disinterested forum because of its lack of significant relationship to the insurance contract in question.

II. *The Relative Ease of Access to Proof*; and

III. *The Availability of Compulsory Process for Witnesses.*

In support of their argument that California is "the true situs of this entire controversy", the Defendants claim that all the important evidence and witnesses to the present insurance controversy are in California. Defendants argue that the parties would have easier access to the transcript, court files and trial exhibits of *Wayte I* in California. They also suggest, without explanation, that the Waytes themselves, the Waytes' counsel, RLC's counsel and National Union's California counsel are all potential witnesses to this suit and are all located in California. This suggestion is misleading. Rather than examining the proof necessary for this declaratory judgment suit, the Defendants look to all the proof necessary in the claims against National Union

and the other insurance companies in the California suit. Obviously, for the purposes of the present motion, it is necessary to look at the evidence relative to this action not to the California action. Most of the issues between National Union and RLC are matters of contract construction. These issues include: (1) Whether Waytes' claims against RLC constituted a claim or claims for breach of fiduciary duty under ERISA?; (2) Whether Waytes' claim was excluded from coverage under the Policy?; (3) If Waytes' claim is the type covered under the Policy, did RLC know or have reason to know of the claim prior to the effective date of the policy so that it would not fall within the effective dates of the Policy periods?; (4) Whether RLC gave National Union timely notice of the Wayte claim?; and (5) Whether the Policy covers punitive damages. The majority of those issues can either be resolved by documentary evidence or by the testimony or depositions of persons primarily in Delaware and New York. To the extent that compulsory process is unavailable for the parties' prospective witnesses to this declaratory judgment case, resort to depositions is possible. The issue of whether the Waytes claimed a breach of RLC's fiduciary duty was decided by the California court in the negative but is one of the grounds for appeal of *Wayte I*. To the extent that *Wayte I* is relevant to these issues, an uncontradicted affidavit states that the trial evidence and record can be easily transported to Delaware, if necessary, since they are not voluminous and "would fill slightly more than one small Bekins box." (Greenberg Affidavit, Paragraph 8). Thus, Defendants' argument on these issues are not compelling.

IV. *The Pendency of a Similar Action in Another Jurisdiction.*

In the instant case there is, as previously stated, a California action pending between

---

**3.** The California substantive law undoubtedly applies to the alleged violation by National Union of the California Unfair Insurance Practice Act. The application of this California law "... would not be a practical or substantive obstacle to this Delaware Court's guaranteeing a fair, impartial and legally economical exercise of civil justice." *Henkels & McCoy International, Inc., et al v. Puerto Rico Telephone Company*, C.A.No. 80C–MR–33.

the parties and two other insurance companies. Defendants attempted to characterize this California insurance claim as the first filed action. A perusal of the facts indicates that the original declaratory judgment was filed by National Union prior to the original action filed by the Defendants in California against National Union and two other insurance companies. This declaratory judgment action was filed on the eve of the *Wayte I* trial, while the California action by the insureds (Defendants) against the insurance company could not be filed "until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the [Insurance] Company." (National Union's Pension Trust Liability Policy, Section IV, Paragraph 6). Thus, absent an agreement, the California case could not be filed until after final judgment in *Wayte I.* As previously stated, where there is no prior action in another forum and the rules of *forum non conveniens* are being applied, this Court's discretion in granting the stay is sparingly exercised. *Fast Foodmakers, Inc. v. Greisler,* 290 A.2d 1; *Boston VLCC Tankers, Etc. v. Bethlehem Steel,* 415 A.2d 492.

V. *All Other Practical Problems that Would Make the Trial of the Case Easy, Expeditious and Inexpensive.*

Defendants' Motion to Stay rests primarily upon the premise that all of their claims against all of their insurers arising out of the Wayte claims ought to be decided in one lawsuit and that the declaratory judgment action is part of this larger California action. This so called "larger California action" is no longer so large. Demurrer or dismissal has been sustained or granted for the second time for the other two insurance companies, with leave to amend after the appellate decision in the underlying Wayte cases. Thus, the only parties presently in the "larger California action" are the same ones in the Delaware Declaratory Judgment Action. With all the foregoing findings, Delaware is the forum where the pending

issues can be easiest and most inexpensively litigated. It should be noted that Plaintiff's statistics as to the probable lack of expeditious resolution of the California Superior Court case is of no value without comparable statistics as to timely resolution of cases in Delaware Superior Court. Additionally, Plaintiff's argument relating to whether the claims asserted by Defendants against National Union in California must have been brought as compulsory counterclaims in this Declaratory Judgment action adds nothing to the applicable criteria for determining a Motion to Stay.

Upon consideration of all the relevant factors incident to this declaratory judgment case, it is clear that the Defendants have not met their onerous burden of showing that this action must be stayed. The Defendants' Motion to Stay is denied.

IT IS SO ORDERED.