# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| IN THE MATTER OF | ) | C.A. No. | 2018-0741-PWG |
| THE ESTATE OF | ) | | |
| MEREDITH L. SULLIVAN | ) | | |

## MASTER'S REPORT

Date Submitted: November 19, 2020

Final Report: February 22, 2021

Scott E. Swenson, Brandon R. Harper, and Charles J. Durante, CONNOLLY GALLAGHER, Wilmington, Delaware, *Attorneys for Petitioner*

Jason C. Powell, THE POWELL FIRM, LLC, Wilmington, Delaware, *Attorney for Respondent*

GRIFFIN, Master

A spouse, who was recently divorced in Delaware but moved to Pennsylvania, dies unexpectedly, leaving her former husband as the named primary beneficiary on her life insurance policies. There is a conflict of laws issue whether Delaware law or Pennsylvania law applies. Unlike Delaware, Pennsylvania has a revocation-upon-divorce law that would divest the former husband of his beneficiary status for the life insurance proceeds. The former husband has moved for judgment on the pleadings, arguing that, based upon a choice of laws analysis, he is entitled to the proceeds under Delaware law. He also requests dismissal of the equitable claim filed by the deceased spouse's estate. In contrast, the deceased spouse's estate and life insurance contingent beneficiaries claim that Pennsylvania law governs since the deceased spouse had changed her domicile to Pennsylvania by the time of her death. I recommend the Court deny the former husband's motion for judgment on the pleadings, in part, and grant it, in part. I find that Pennsylvania law governs the disposition of the deceased spouse's individual life insurance proceeds so the former husband is not entitled to those proceeds as a matter of law, and recommend that he be ordered to pay those proceeds to the deceased spouse's estate. In addition, I find that Delaware law governs the disposition of the deceased spouse's group life insurance proceeds and the former husband is entitled to those proceeds as a matter of law. Finally, I recommend that the Court dismiss the equitable claim of deceased spouse's estate. This is a final report.

## I. Background

Meredith Sullivan ("Decedent") and Petitioner Luke Chapman were married on September 12, 2009 and lived in Delaware during most of their marriage.[1] On February 22, 2018, Petitioner filed for divorce, with the Delaware Family Court entering a divorce decree ("Decree") on April 13, 2018.[2] Decedent was the victim of an unexpected, violent crime, which caused her death on April 23, 2018.[3] At her death, Decedent was insured on three life insurance policies ("Policies") – two individual Massachusetts Mutual Life Insurance Company ("MassMutual") policies, and a University of Delaware group life insurance policy through Metropolitan Life Insurance Company ("MetLife").[4] Petitioner was the sole beneficiary on the MassMutual policies and the named primary beneficiary on the MetLife policy.[5] Respondents Faye Sullivan ("Sullivan"), Decedent's mother, Jessica Sullivan ("Jessica"), Decedent's sister, and Thomas Sullivan III ("Thomas"), Decedent's brother, (together "Respondents") were the named contingent beneficiaries on the

---

[1] Docket Item ("D.I.") 1, ¶¶ 2, 4. The issue of whether Decedent remained domiciled in Delaware until her death was originally in dispute. Petitioner subsequently conceded that Decedent was domiciled in Pennsylvania at the time of her death, and Decedent's domicile in Pennsylvania at the time of her death is no longer in dispute.

[2] D.I. 1, ¶¶ 6, 7; *see also* D.I. 21, ¶ 77. The divorce action remains pending for purposes of property settlement. D.I. 1, ¶ 8.

[3] D.I. 1, ¶ 10.

[4] D.I. 16, ¶ 26.

[5] *Id.*, ¶ 43.

MetLife policy.[6] Sullivan is the administrator of Decedent's probate estate opened in Pennsylvania, which would receive the MassMutual proceeds if Petitioner is determined not to be entitled to those proceeds.[7] Life insurance proceeds ("Proceeds") from the Policies were paid out to Petitioner on or about September of 2018.[8]

Petitioner filed a petition for review of revocation of his letters of estate administration and for declaratory judgment on October 15, 2018, seeking a declaratory judgment that Decedent was domiciled in Delaware at the time of her death, and Delaware is the proper jurisdiction for the administration of Decedent's estate.[9] Sullivan's response denied that Decedent was domiciled in Delaware at her death.[10] The matter was stayed for mediation, which was unsuccessful.[11] In the

---

[6] *Id.*, ¶¶ 44-46. I use first names in pursuit of clarity and intend no familiarity or disrespect.

[7] Sullivan opened an estate for the Decedent on June 27, 2018 with the Delaware County Register of Wills in Pennsylvania. *Id.*, ¶ 20, Ex. B. There are no contingent beneficiaries designated for the MassMutual policies, which state "[i]f no beneficiary is entitled to the payment at time of claim, the proceeds shall be made to . . . the Owner's [Decedent's] estate." D.I. 35, Exs. 1, 2.

[8] MetLife denied Sullivan's claim for the Proceeds referencing Decedent's divorce from Petitioner in Delaware and that Delaware does not have a revocation-upon-divorce law affecting insurance beneficiary designations. D.I. 16, ¶¶ 38, 40, Ex. H. MassMutual also denied Sullivan's claim, stating that "all relevant and material acts necessary to bring the Policies into force happened in, or originated from, the State of Delaware," so the Pennsylvania revocation-upon-divorce law did not apply. *Id.*, ¶ 42, Ex. I.

[9] D.I. 1.

[10] D.I. 5, ¶ 1.

[11] D.I. 8; D.I. 12.

amended petition ("Amended Petition") filed on June 4, 2019, Petitioner added the claim that, based upon conflicts of laws principles, Delaware law governs the disposition of the Proceeds, making him the proper recipient of the Proceeds.[12] Respondents, in their counterclaims, ask the Court to declare that Petitioner is not entitled to receive any of the Proceeds under Pennsylvania's revocation-upon-divorce law, which operates to divest Petitioner of his beneficiary status for the Proceeds by reason of divorce.[13] In addition, Sullivan, in her counterclaim, argues it would be inequitable for Petitioner to retain the Proceeds since Decedent did not intend for Petitioner to remain as beneficiary on her life insurance policies and Petitioner, as her insurance agent and financial advisor, breached his fiduciary duty when he failed to advise her that she could change her beneficiary designation while divorce proceedings were pending.[14]

Petitioner filed a motion for judgment on the pleadings on August 15, 2019, and an amended motion ("Motion") on October 28, 2019, arguing that he is entitled to judgment as a matter of law, irrespective of Decedent's domicile, because, under Delaware choice of law principles, Delaware law governs the distribution of the

---

[12] D.I. 16, ¶¶ 59-67. The Amended Petition also added Jessica and Thomas as interested parties. *Id.*, ¶¶ 45, 46.

[13] D.I. 17, ¶ 74; D.I. 28, ¶¶ 76-77.

[14] D.I. 17, ¶¶ 77-80.

Proceeds.[15] He claims the effects of the Decree are determined by Delaware law, and that the Policies' most significant relationship is with Delaware.[16] Further, Petitioner asserts Sullivan's equitable claim should be dismissed.[17] Respondents oppose the Motion, arguing that choice of law principles support looking to the law of the insured's new domicile – Pennsylvania – to determine whether the former spouse's beneficiary designation would be automatically revoked by the divorce, which it would be under Pennsylvania law.[18] Sullivan contends that her equitable claim focuses on Decedent's intent, a disputed factual issue, and that Petitioner could conceivably be found to have breached his fiduciary duty.[19]

An oral argument on the Motion was held by Zoom on April 9, 2020, followed by the parties filing additional submissions on May 11, 2020.[20] On July 1, 2020, the Court ordered the Motion stayed to schedule an evidentiary hearing on Decedent's domicile.[21] Petitioner filed exceptions to the Court's July 1, 2020 Order, on July 13,

---

[15] D.I. 22; D.I. 30; D.I. 35.

[16] D.I. 35, at 12-21.

[17] *Id.*, at 22-25.

[18] D.I. 39, at 9-15.

[19] *Id.*, at 16-19.

[20] D.I. 46; D.I. 49; D.I. 50.

[21] D.I. 54. The Court found it necessary to determine Decedent's domicile at the time of her death prior to making a decision on the Motion because, if she is determined to be domiciled in Delaware when she died, Delaware law applies and there is no conflict of laws dispute for the Court to decide. *Id.*, at 2. The Court held that deciding the Motion

2020, but withdrew those exceptions on August 13, 2020.[22]  Discovery disputes

arose, with the Court addressing those disputes in a telephonic oral argument on

November 18, 2020, staying discovery pending a decision on the Motion.[23]  During

that argument, Petitioner conceded that Decedent was domiciled in Pennsylvania at

the time of her death.[24]  The choice of law issue remains and I address it below.

## II.    Standard of Review

In determining a motion for judgment on the pleadings under Court of

Chancery Rule 12(c), "a trial court is required to view the facts pleaded and

inferences to be drawn from such facts in a light most favorable to the non-moving

party."[25]  The Court takes all well-pleaded factual allegations in the pleadings as

admitted and can only grant a motion for judgment on the pleadings "when no

material issue of fact exists and the movant is entitled to judgment as a matter of

law."[26]  "The court also may consider the unambiguous terms of exhibits attached to

---

without first addressing Decedent's domicile would, effectively, be rendering an advisory opinion. *Id.*

[22] D.I. 55; D.I. 58.

[23] Petitioner's motion for a protective order, which was filed on November 12, 2020, was granted, staying discovery pending a decision on the Motion.  Respondent's motion to compel, filed on November 4, 2020, was held pending a decision on the Motion. D.I. 67.

[24] D.I. 68, Arg. Tr. 11:7-8. *See also* D.I. 64, ¶ 2.

[25] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, LP*, 624 A.2d 1199, 1205 (Del. 1993); *see also W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp.*, 914 A.2d 636, 641 (Del. Ch. 2006).

[26] *Desert Equities, Inc.*, 624 A.2d at 1205; *see also Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 925 (Del. 2017), *as revised* (June 28, 2017).

the pleadings, including those incorporated by reference."[27] "The Court need not, however, accept conclusory allegations or draw unreasonable inferences from the pleadings."[28]

## III.  Analysis

### A. Which state's law governs the disposition of the life insurance proceeds?

This case involves a conflict of laws issue – whether Delaware or Pennsylvania law governs the disposition of life insurance proceeds paid on individual and group life insurance policies.  The issue appears to involve questions of first impression in Delaware.  "Under general conflict of laws principles, the forum court will apply its own conflict of laws rules to determine the governing law in a case."[29]  Therefore, I apply Delaware's choice of law principles in a conflict of laws analysis between Delaware and Pennsylvania laws.  Since the Policies are silent on choice of law, I first "compare the laws of the competing jurisdictions to determine whether the laws actually conflict," or would "produce different results when applied to the factors of the case."[30]  Pennsylvania has a revocation-on-divorce

---

[27] *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086, 1090 (Del. Ch. 2006).

[28] *Raymond L. Hammond Irrevocable Tr. Agreement*, 2016 WL 359088, at *3 (Del. Ch. Jan. 28, 2016).

[29] *Tyson Foods, Inc. v. Allstate Ins. Co.*, 2011 WL 3926195, at *5 (Del. Super. Aug. 31, 2011).

[30] *CNH Am., LLC v. Am. Cas. Co. of Reading, Pennsylvania*, 2014 WL 626030, at *7 (Del. Super. Jan. 6, 2014) (citations omitted); *see also Motors Liquidation Co., Dip Lenders Tr.*

statute that deems a former spouse of a life insurance policyholder domiciled in Pennsylvania "to have predeceased the policyholder for beneficiary purposes under the terms of the life insurance policy."[31] If Pennsylvania law applies, Petitioner is treated as if he predeceased Decedent, divesting him of his beneficiary status for the Proceeds. In contrast, Delaware does not have a statute automatically revoking beneficiary designations upon divorce, so under the terms of the insurance policies (without other considerations), Petitioner, as the primary beneficiary on the Policies, is entitled to the Proceeds.[32] Because the competing jurisdictions' laws conflict, I conduct a choice of laws analysis.

"It is well established that Delaware decides choice of law questions based upon the "most significant relationship test" set forth in the [*Restatement (Second) of Conflict of Laws*]."[33] "The Court's interpretation of an insurance policy is a matter

---

*v. Allianz Ins. Co.,* 2013 WL 7095859, at *2 (Del. Super. Dec. 31, 2013), *aff'd*, 191 A.3d 1109 (Del. 2018).

[31] *State Farm Ins. Co. v. Kitko*, 241 A.3d 648, 655 (Pa. Super. 2020); 20 Pa.C.S.A. §6111.2.

[32] D.I. 16, ¶ 43. Delaware's revocation-on-divorce law limits automatic revocation on divorce to a testamentary disposition or appointment of property made by a will to an ex-spouse. 12 *Del. C.* §209. The beneficiary designations on the Policies were clear and unambiguous and courts may not interpret insurance documents that are not ambiguous. *See In re Estate of Willin*, 1996 WL 757214, at *2 (Del. Ch. Dec. 9, 1996).

[33] *CNH Am., LLC*, 2014 WL 626030, at *6. The *Restatement (Second) of Conflict of Laws* is hereinafter referred to as "*Second Restatement.*" *See also Pharmathene, Inc. v. Siga Techs., Inc.,* 2008 WL 151855, at *6 (Del. Ch. Jan. 16, 2008); *Reese v. Wheeler*, 2004 WL 1320900, at *2 (Del. Super. June 10, 2004) ("Delaware applies the 'most significant relationship' test for choice of law issues in a contract case"). "[T]he traditional choice of law guidelines followed by the Delaware courts [provided that] issues pertaining to . . . the construction and validity of a contract [are] governed by the law of the place where it is

of law."[34]    The    Delaware    Supreme    Court    found    that    the *Second Restatement* generally provides

> three layers of guidance for determining the state with the most significant relationship to the dispute and thus the applicable state law. First, the *Second Restatement* provides specific presumptions. If the facts of a case don't fit those specific presumptions, there are broader subject-matter-specific factors to use.   Regardless, courts use the general policy considerations for choice of law articulated in [*Second Restatement*'s] §6 to guide the overall analysis.[35]

I first consider the effect of the Decree on the choice of law for determining the distribution of the Proceeds.  Petitioner argues that the dispute "centers on the effect of the Divorce on the distribution of the Proceeds" and, because the Decree was issued in Delaware, Delaware law controls.[36]  He relies on the court's holding in *Richetti v. Sanzo*, in which then Vice Chancellor Chandler held that, under Delaware choice of law principles, "the law of the state in which a divorce decree is

---

made or the place of contracting." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. RLC Corp.,* 449 A.2d 257, 261 (Del. Super. 1982) (citing *Harris v. New York Life Ins. Co.*, 33 A.2d 154, 157 (Del. Ch. 1943)); *see also Wilmington Tr. Co. v. Mut. Life Ins. Co.,* 177 F.2d 404, 406 (3d Cir. 1949) ("It is generally the law that the place where a policy of insurance is delivered shall be deemed to be the place where the contract was made").  "Issues relating to performance of the agreement are resolved pursuant to the application of the laws of the jurisdiction in which the contract was performed." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 449 A.2d at 261 (citations omitted).  In contrast, "[t]he modern approach indicates that the laws of the jurisdiction which had the most significant relationship to the transaction and parties would control the substantive legal questions." *Id.* (citations omitted).

[34] *Reese*, 2004 WL 1320900, at *2.

[35] *Certain Underwriters at Lloyds, London v. Chemtura Corp.* [hereinafter "*Chemtura*"], 160 A.3d 457, 465 (Del. 2017).

[36] D.I. 35, at 12-13.

rendered should govern disputes concerning its interpretation or effect."[37] Sullivan responds that "*Richetti* did not rule that the location of the divorce is a dispositive factor," but only that it is one factor in the conflict of laws analysis.[38] She argues that Pennsylvania has a "stronger interest" in this instance and its law should control.[39]

In *Richetti*, the decedent agreed to make his ex-wife the beneficiary on his life insurance policy in a settlement agreement that was incorporated into a divorce decree entered by a Pennsylvania court.[40] The decedent violated the court order by changing his beneficiary designation.[41] He then moved to Delaware and, after his death, the ex-wife did not receive the promised life insurance proceeds.[42] The *Richetti* Court considered that the divorce decree and separation agreement were negotiated, entered, and breached in Pennsylvania, and held that Pennsylvania law governs because "the rights and duties of the parties affected by the actions in dispute in this litigation bear a more significant relationship to Pennsylvania than to Delaware."[43]

---

[37] 1994 WL 18683, at *1 (Del. Ch. Jan. 5, 1994).

[38] D.I. 39, at 14.

[39] *Id.*

[40] *Richetti,* 1994 WL 18683, at *1.

[41] *Id.*

[42] *Id.*

[43] *Id.*

Unlike *Richetti*, here, the dispute does not concern the Decree's effect or interpretation. The Family Court entered the Decree but property settlement (between Petitioner and Decedent's estate) remains pending, and no obligations regarding the Policies' beneficiary designations, and no change in the parties' rights regarding the Policies, have been imposed by the Family Court.[44] The Proceeds are not marital assets and their disposition is not a part of the divorce proceedings.[45]

---

[44] Petitioner cites to a number of other states' cases to show that the law of the state issuing the divorce decree is applied "when courts grapple with its meaning and effect." D.I. 41, at 4. Those cases are distinguishable from the instant case because, in those cases, the law applied was that of the state where the divorce occurred and rights related to a spouse's life insurance were transferred between the parties, either as specified in the divorce order (i.e., a court-imposed obligation that one ex-spouse maintain the other as designated beneficiary on life insurance), or by law. *See, e.g., Murphy v. Travelers Ins. Co.,* 534 F.2d 1155, 1160 (5th Cir. 1976) (applying California law in a Texas action because the ex-husband agreed to make minor children life insurance beneficiaries as part of property settlement incorporated into California divorce decree); *Travelers Ins. Co. v. Fields*, 451 F.2d 1292, 1295-97 (6th Cir. 1971) (applying Kentucky law because restoration-of-property order in Kentucky divorce decree extinguished ex-wife as ex-husband's life insurance beneficiary, despite Ohio choice of law provision in policy); *New England Mut. Life Ins. Co. v. Spence*, 104 F.2d 665, 666-67 (2d Cir. 1939) (applying Texas law in New York action because, under Texas law, there was an involuntary transfer extinguishing ex-wife's interest as beneficiary in ex-husband's life insurance upon divorce, even though life insurance was not mentioned in divorce decree); *Maddux v. Philadelphia Life Ins. Co.*, 77 F. Supp. 2d 1123, 1128 (S.D. Cal. 1999) (applying Oklahoma law in a California action over ex-husband's life insurance proceeds because the Oklahoma divorce judgment specifically extinguished ex-wife's rights in ex-husband's property); *Equitable Life Assur. Soc. of U.S. v. Flaherty*, 568 F. Supp. 610, 612-13 (S.D. Ala. 1983) (applying Florida law in an Alabama action because ex-husband agreed to maintain life insurance for minor child as part of a Florida divorce decree). Here, rights to Decedent's life insurance were not transferred through the Decree's entry, and the Proceeds' distribution was not effectuated through the operation of the Decree.

[45] *See generally In re Estate of C.R.P.,* 2015 WL 3613561, at *5 (Del. Fam. June 9, 2015). The parties do not dispute that the Proceeds are not marital assets. *See* D.I. 48, Arg. Tr. 68:10-69:17. Whether the value of Decedent's and/or Petitioner's life insurance policies are marital assets is not at issue here. *See generally In re Marriage of A.J.H., Jr.,* 2002 WL

Because the Policies vested at Decedent's death and the Proceeds were paid out, the Family Court's ability to direct continuation of life insurance beneficiary designations ended. Like *Richetti*, it is appropriate for me to conduct a conflict of laws inquiry under the *Second Restatement* and considering the facts in this case, to determine whether Pennsylvania or Delaware has the more significant relationship with the insurance and the parties.

Next, Petitioner argues that, under conflict of laws principles in *Second Restatement*'s §188 and §192, Delaware law governs the disposition of the Proceeds. He claims the MassMutual policies' most significant relationship is with Delaware, since Decedent was domiciled in Delaware at the time she applied for the MassMutual policies and until shortly before her death, the MassMutual policies' applications were taken and delivered in Delaware (place of contracting and place of negotiation), and the premiums were paid in Delaware (place of performance).[46] Further, Petitioner asserts that Delaware law governs the distribution of MetLife proceeds under Comment h of §192 ("Comment h"), since MetLife group life

---

31454020, at *1 (Del. Fam. May 1, 2002); *Tuminaro v. Tuminaro*, 1999 WL 689260, at *2 (Del. Fam. Apr. 30, 1999); *but see In re Marriage of Tweedale v. Tweedale*, 1996 WL 861492, at *7 (Del. Fam. Dec. 17, 1996), *aff'd,* 703 A.2d 645 (Del. 1997) (Court found husband's life insurance policy was not marital property since marital contribution to the policy was *de minimus* and husband was ordered to reimburse wife for her share of marital contribution).

[46] D.I. 35, at 15. Petitioner cited MassMutual's determination that Delaware law governs distribution of the Proceeds as evidence of Delaware's significant contacts. *Id.*, at 16.

12

insurance was issued to Decedent's employer, the University of Delaware, which has its principal place of business in Delaware.[47]

Respondents contend that the "most significant relationship" test in the *Second Restatement* favors applying Pennsylvania law for all Policies because of that state's strong policy interest in its revocation-on-divorce law, consistent with §6 and Comment d of §192 ("Comment d"), arguing that "if a person changes domicile after obtaining a life insurance policy, the law of the new domicile should be applied to determine whether an ex-husband's beneficiary designation should be revoked."[48] They point to the United States Supreme Court opinion in *Sveen v. Melin*, to support that proposition, alleging that the U.S. Supreme Court found that Minnesota's revocation-on-divorce statute did not impair freedom to contract, and "an insured cannot reasonably rely on a beneficiary designation remaining in place after a divorce."[49] Petitioner denies the applicability of *Sveen*, and argues that Comment d's exception pertaining to a new domicile's revocation-upon-divorce law does not apply.[50]

---

[47] *Id.*, at 20-21 (citing *Second Restatement* §192, cmt. h (1971)).

[48] D.I. 39, at 12-13. *See also Second Restatement* §192, cmt. d (1971).

[49] D.I. 39, at 9-10 (citing *Sveen v. Melin*, 138 S. Ct. 1815, 1823 (2018)).

[50] Petitioner asserts, unlike *Sveen*, this case does not involve a challenge to the validity of Pennsylvania's revocation-upon-divorce law. D.I. 41, at 8.

To determine the most significant relationship for the Policies, I evaluate relevant contacts and factors under the first "layer of guidance" – §192; then, under §188, the second "layer of guidance," followed by the general considerations of §6.[51] "The §188 factors and §192 presumption . . . are evaluated based on their relative importance in the particular case and in light of the *Second Restatement*'s general considerations found in §6."[52]

Section 192 begins with the presumption for life insurance that the law of the state governs where the insured was domiciled when she applied for the life insurance.[53] The presumption doesn't apply, however, when another state has a more significant relationship under §6.[54] Comment d gives examples of when the most significant relationship changes and identifies the situation where an insured

---

[51] *See generally Chemtura*, 160 A.3d 457, 465 (Del. 2017).

[52] *Id.*; *see also CNH Am., LLC v. Am. Cas. Co. of Reading, Pennsylvania*, 2014 WL 626030, at *7 (Del. Super. Jan. 6, 2014) ("[C]ontacts and factors . . . are not to be applied simply by counting up the interests on each side, but rather 'evaluated according to their relative importance with respect to the particular issue.'") (citations omitted).

[53] *Second Restatement* §192 (1971). The presumption is applicable if there is no effective choice of law provision in the insured's application. *Id.* Petitioner offers the federal district court's holding in *State Farm Life Ins. Co. v. Avila* [hereinafter "*Avila*"] for the proposition that §192 "relies exclusively on the domicile of the insured at the time he applied for the policy in question." D.I. 35, at 19, n. 62 (citing *Avila*, 331 F. Supp. 3d 860, 866 (S.D. Iowa 2018)). I decline to following the reasoning in *Avila*, which did not apply Comment d and relied solely on the provision in Comment a of §192 addressing the effect of a divorce between the insured and beneficiary and a change of beneficiary, which are not the issues here. *Avila*, 331 F. Supp. 3d at 866. Further, *Avila* did not fully analyze the §6 factors, since "neither party pleaded choice of law or offered related evidence." *Id.*, n. 3.

[54] *Second Restatement* §192 (1971).

changes her domicile to another state and "has appointed [her spouse] as a beneficiary."[55]  In that situation, Comment d indicates the law of the new domicile "might well be applied to determine whether the appointment of the [spouse] is automatically revoked by divorce."[56]  Comment d states, however, that the law of the insured's new domicile would most likely not be applied if, by doing so, the obligations of the insurance company would be substantially affected.[57]

Here, Decedent had appointed her spouse as beneficiary of the Policies, then was divorced in Delaware and changed her domicile to Pennsylvania.  She died unexpectedly shortly thereafter.  This appears to be the situation that Comment d refers to – meaning that Decedent's new domicile's law "might well be applied" to determine whether the beneficiary designation is automatically revoked by divorce. Unlike Delaware, Pennsylvania has a revocation-on-divorce law ["§6111.2"] that provides, if an individual domiciled in Pennsylvania designated her spouse as beneficiary on her life insurance policy and was divorced at the time of her death, then that designation becomes ineffective and the ex-spouse is treated as if he

---

[55] *Id.*, cmt. d.

[56] *Id.*

[57] *Id.*

15

predeceased the individual.[58] And, §6111.2 ensures that the obligations of the insurance company are not affected.[59]

Next, I look at the second "layer of guidance," or the "broader subject-matter-specific factors" to use to determine which state has the most significant relationship related to the MassMutual and MetLife insurance policies. The factors are identified in the *Second Restatement*'s §188, and include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties."[60]

Delaware was the place of contracting, negotiating, and performance of the MassMutual and MetLife policies. Another §188 factor pertains to domicile, residence, nationality, place of incorporation, and place of business of the parties, and §188's Comment references §192's statement that "the domicil[e] of the insured

---

[58] 20 Pa.C.S.A. §6111.2.

[59] Petitioner asserts that the "Pennsylvania law could be said to 'substantially affect the obligations of the insurance company,' given the presumptive difference in payee." D.I. 35, at 19, n. 62 (referencing *Second Restatement* §192, cmt. d (1971)). I find his assertion unpersuasive. §6111.2 provides that an insurance company is not liable for paying an ex-spouse if the payments "would have been proper in the absence of [§6111.2]." 20 Pa.C.S.A. §6111.2(c)(1). In this case, MassMutual and MetLife have paid out the Proceeds to Petitioner, have no remaining obligations under the Policies, and are not parties to this action.

[60] *Chemtura*, 160 A.3d 457, 465 (Del. 2017) (citing *Second Restatement* §188(2) (1971)). §188 further provides that the laws of the state where the contract was negotiated and performed will usually apply "except as otherwise provided in [§192]." *Second Restatement* §188(3)(1971).

16

is a contact of particular importance in the case of life insurance contracts."[61]

Recognizing that §188 and §192 factors are evaluated based upon their relative importance to each issue, I conclude that the insured's domicile has more relative importance in this case. And, her domicile at the time of her death was Pennsylvania, which has §6111.2 that automatically revokes beneficiary designations upon divorce. The place of contracting (or where the policy was applied for or delivered) is of lesser importance since the issue is not interpreting the contract but inclusion of an implied term through public policy (i.e., the automatic revocation of life insurance beneficiary designation upon divorce implemented by §6111.2). Since Decedent was domiciled in Pennsylvania at the time of her death, Pennsylvania has a much stronger policy interest in ensuring that the implied term is effectuated than Delaware does. Further, the obligations of the insurance company are not affected if Pennsylvania law governs in this instance.[62]

In addition, I consider §6's general choice of law principles that apply in this case – needs of the interstate system, relevant policies and interests of the forum and other interested states, protection of justified expectations, and certainty,

---

[61] *Second Restatement* §188, cmt. on subsection (2) (1971). In addition, another §188 factor, the situs of the subject matter of the contract, is of more importance when the contract "deals with a specific physical thing, such as land or a chattel." *Id.* Since the subject matter of a life insurance contract is the insured, that factor overlays with the §188 factor pertaining to domicile.

[62] *See* n. 59 *supra.*

predictability and uniformity of result.[63]  Since there are not consistent revocation-on-divorce policies among the states, the needs of the interstate system and the values of certainty, predictability and uniformity of result, do not favor either Delaware or Pennsylvania's laws in this context.[64]  And, as noted above, Pennsylvania and Delaware have conflicting policies on the automatic revocation of beneficiary designations upon divorce.  Because Decedent was a Pennsylvania domiciliary, I conclude Pennsylvania has demonstrated a stronger policy interest in ensuring that her estate benefits from §6111.2.[65]  Further, Petitioner does not have justified expectations that should be protected.  He was not the owner of the Policies

---

[63] *Second Restatement* §6 (1971).  Other §6 considerations do not apply here.  Specifically, the factor pertaining to basic policies underlying the field of law at issue addresses situations where the competing states' policies have only minor differences, which is not the case here; and the goal of keeping choice of law rules simple and easy to apply is "not to be overemphasized," and difficult to accomplish, given the complexity of this situation. *Id.*, cmt. on subsection (2).

[64] Over one-half of the states have revocation-on-divorce statutes that provide for automatic revocation of life insurance beneficiary designations upon divorce. *See* Andy Ives, *Revocation-on-Divorce – It Matters Where you Live* (Nov. 28, 2018), https://www.irahelp.com/slottreport/revocation-divorce-%E2%80%93-it-matters-where-you-live (last visited on February 22, 2021).

[65] By enacting §6111.2, Pennsylvania demonstrated its strong policy interest in offering the automatic revocation of beneficiary designation upon divorce to all persons domiciled in Pennsylvania.  There is no evidence that Pennsylvania intended to limit §6111.2's applicability to a small portion of its domiciliaries, or those who had applied for life insurance in Pennsylvania, as would occur if the law of the state where the insured applied for the life insurance governs.  In addition, §6111.2 does not limit its applicability to persons who have been domiciled in Pennsylvania for some quantified period of time.

and, quoting the U.S. Supreme Court in *Sveen v. Melin*, "an insured cannot reasonably rely on a beneficiary designation remaining in place after a divorce."[66]

I recognize that the MassMutual policies have significant contacts with Delaware, including as the state where Decedent applied for the MassMutual individual life insurance policies. However, I find the strong countervailing considerations set forth in Comment d (supporting the application of the revocation-on-divorce law of Decedent's new domicile), and the *Second Restatement*'s guidance in total, override any presumption in favor of Delaware regarding the MassMutual proceeds. Accordingly, Pennsylvania law governs the disposition of the MassMutual proceeds and, based upon §6111.2, Petitioner is divested of his beneficiary status for the MassMutual proceeds. He is not entitled to the MassMutual proceeds, and shall pay restitution of the MassMutual proceeds to Decedent's estate, which is the rightful recipient pursuant to the MassMutual policy.[67]

However, with regard to the MetLife group life insurance proceeds, there are additional factors in Comment h that need to be considered. Comment h provides

---

[66] *Sveen v. Melin*, 138 S. Ct. 1815, 1823 (2018). The *Sveen* case is not similar to this case, since it involved a challenge to Minnesota's revocation-on-divorce statute as violative of the federal Contracts Clause for revoking the named beneficiary on a life insurance policy. However, its analysis (and finding that Minnesota's automatic revocation of life insurance beneficiary designations upon divorce is unlikely to disturb the policy holder's expectations) is helpful. *Id.*

[67] *See* n. 7 *supra.*

that, unlike individual insurance policies, "the rights against the insurer [for group life insurance policies] are usually governed by the law which governs the master policy."[68] In the absence of an effective choice of law clause in the policy, typically, the law of the state "where the employer has his principal place of business" will apply to group life insurance contracts, and not the "law of the state where the employee is domiciled and received [her] certificate."[69] Comment h recognizes that "it is desirable that each individual insured should enjoy the same privileges and protection."[70]

In determining that Pennsylvania law governs the disposition of MassMutual proceeds, I am guided by Comment d's support for applying the revocation-on-divorce law of an insured's new domicile, rather than the law from her former state.

---

[68] *Second Restatement* §192, cmt. h (1971); *see generally Belcher v. Metro. Life Ins. Co.*, 943 F.2d 51 (6th Cir. 1991); *Karpenski v. Am. Gen. Life Companies, LLC*, 999 F. Supp. 2d 1235, 1242 (W.D. Wash. 2014) (citing *Erickson v. Sentry Life Ins. Co.*, 719 P.2d 160, 162 (Wash. Ct. App. 1986)); *Bradley v. Old Republic Life Ins. Co.*, 712 F. Supp. 90, 93 (S.D. Miss. 1988); *Fischer v. AMEX Life Assur. Co.*, 1992 WL 251388, at *2 (Minn. Ct. App. Oct. 6, 1992) ("Even absent any contract stipulations, the large majority of the cases have concluded that the laws of that state should apply in which the master policy was delivered.")(citation omitted); *Miller v. Home Ins. Co.*, 605 S.W.2d 778, 780 (Mo. 1980).

[69] *Second Restatement* §192, cmt. h (1971).

[70] *Id. Cf. Erickson*, 719 P.2d at 162 ("By applying the law of the state where the master policy was delivered, 'everywhere it shall have the same meaning and give the same protection and that inequalities and confusion liable to result from applications of diverse state laws' would be avoided.") (citing *Boseman v. Connecticut Gen. Life Ins. Co.*, 301 U.S. 196, 206 (1937)); *Reger v. Nat'l Ass'n of Bedding Mfrs. Grp. Ins. Tr. Fund*, 372 N.Y.S.2d 97, 114-15 (N.Y. App. Div. 1975) ("The Second Restatement on the Conflict of Laws takes the position that uniformity in interpretation, construction and applicability is desirable in all group insurance contracts where insureds reside in different states").

I found the insured's domicile, in that instance, is a key factor in determining the state with the most significant relationship to the parties and the transaction related to individual life insurance policies. The analysis differs for a group life insurance policy, however, since group life insurance is issued to the insured's employer, not the individual insured. Comment h ties the governing law to the employer's principal place of business, in most instances, and **not** to the employee's domicile, to ensure that employees insured under a group policy are treated the same.[71] The employee's domicile is assigned less importance as a factor when a group life insurance policy is involved. MetLife was a group life insurance policy issued to Decedent's employer, the University of Delaware, which is located in Delaware. I find that MetLife's status as a group life insurance policy alters the conflict of laws analysis for the MetLife proceeds, tilting it in favor of Delaware for the governing law, rather than Pennsylvania. Therefore, I conclude that Delaware law governs the disposition of the MetLife proceeds. Under Delaware law, Petitioner is entitled to receive the MetLife proceeds. "[I]f warranted, the law of one state may be found to apply to some issues, while the law of another state may be found to apply to others."[72] This is such an instance.

---

[71] *See Second Restatement* §192, cmt. h (1971).

[72] *CNH Am., LLC v. Am. Cas. Co. of Reading, Pennsylvania*, 2014 WL 626030, at *7 (Del. Super. Jan. 6, 2014).

In conclusion, I recommend that the Court deny judgment to Petitioner, in part, and declare that the MassMutual proceeds be paid to Decedent's estate, as a matter of law. I also recommend that the Court grant judgment to Petitioner, in part, and declare that he is entitled to receive the MetLife proceeds as a matter of law.

## B. Does Sullivan's equitable claim survive the Motion?

Petitioner also asks for the dismissal of Sullivan's equitable counterclaim because of her failure to articulate a cognizable claim and reliance on conclusory allegations concerning Decedent's intent.[73] Sullivan argues that she seeks, in effect, to impose a resulting or constructive trust over the Proceeds because permitting Petitioner to retain the Proceeds would be inequitable, and a party's intent presents a factual issue for trial.[74] In addition, Sullivan contends that a constructive trust could be imposed since it is reasonably conceivable that Petitioner could be found to have breached a fiduciary duty as Decedent's insurance agent and financial advisor.[75] Petitioner responds that Decedent's intent is immaterial, the claim is not well-pleaded, and he breached no fiduciary duty as her insurance agent.[76]

---

[73] D.I. 35, at 22-25. The conflict of laws issue does not extend to the equitable claim, since that claim centers around the parties' relationship and any acts associated with that claim, which occurred in Delaware. *See generally Second Restatement* §221 (1971); *Hurst v. Gen. Dynamics Corp.*, 583 A.2d 1334, 1338 (Del. Ch. 1990).

[74] D.I. 39, at 16-18.

[75] *Id.*, at 19.

[76] D.I. 35, at 23-25.

To survive a motion for judgment on the pleadings, the non-movant is accorded the same benefits as they would have defending a motion to dismiss under Rule 12(b)(6).[77]   Here, Sullivan must have provided sufficient notice of the basis of her claim and alleged sufficient facts to support her inference that it would be inequitable for Petitioner to retain the Proceeds, so that the remedy of either a resulting or constructive trust could be imposed.   She is given the benefit of all reasonable inferences.

"A resulting trust arises from the presumed intentions of the parties and upon the circumstances surrounding the particular transaction."[78]   Those circumstances show that "the beneficial interest was not intended to follow the legal title."[79]   The court considers two main factors when deciding whether to impose a resulting trust: (1) that consideration was paid, typically for real estate but also for acquisitions of personality, and (2) the intent of the person who paid the consideration.[80]   The payment of the consideration "must be part of the original transaction of purchase and not pursuant to any subsequent agreement between the parties."[81]

---

[77] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000); *see also Raymond L. Hammond Irrevocable Tr. Agreement*, 2016 WL 359088, at *3 (Del. Ch. Jan. 28, 2016).

[78] *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982); *see also Hudak v. Procek*, 727 A.2d 841, 843 (Del. 1999).

[79] *Quill v. Malizia*, 2005 WL 578975, at *8 (Del. Ch. Mar. 4, 2005).

[80] *Wagner v. Hendry*, 2000 WL 238009, at *6 (Del. Ch. Feb. 23, 2000); *Adams*, 452 A.2d at 152.

[81] *Wagner*, 2000 WL 238009, at *6 (citations omitted).

A constructive trust is not based on the parties' intent, but may be imposed "when a [party's] fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty."[82] In those situations, equity impresses "a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."[83] The person seeking to impose a resulting or constructive trust has the burden of proof and "must establish [its] entitlement to relief by clear and convincing evidence."[84]

First, I consider whether Sullivan has alleged sufficient facts to support the inference that equity would impose a resulting trust upon the Proceeds because the beneficial interest in the Proceeds is held by someone other than the person who is legally entitled to the Proceeds.[85] Here, viewing the facts pleaded and the inferences drawn from those facts in a light most favorable to Sullivan, I presume Decedent paid for the premiums on her Policies. Since she was the insured and policy owner,

---

[82] *Adams*, 452 A.2d at 152; *see also Quill*, 2005 WL 578975, at *8; *Elliott v. Holladay*, 2003 WL 1240497, at *5 (Del. Ch. Mar. 7, 2003).

[83] *Adams*, 452 A.2d at 152, n. 4 (citation omitted).

[84] *Wagner*, 2000 WL 238009, at *6 (Del. Ch. Feb. 23, 2000); *see also Blue Rock Liquors, Inc. v. Reilly*, 1994 WL 698622, at *3 (Del. Ch. Nov. 28, 1994).

[85] In the context of life insurance, a resulting trust might arise where a party other than the insured pays for life insurance and the evidence and circumstances surrounding the purchase of the life insurance show that the party who paid for the insurance intended to keep the beneficial interest in the insurance. *See, e.g., Blue Rock Liquors, Inc. v. Reilly*, 1994 WL 698622, at *4.

24

she held both the beneficial interest and the legal title in the Policies and designated the beneficiaries on the Policies. Sullivan seeks a resulting trust over the Proceeds because she alleges Decedent intended to change her beneficiary designation, and circumstances, including her misunderstanding about altering those designations while a divorce was pending and her untimely death, prevented her from doing so. The beneficiary designations on the Policies were clear and unambiguous and courts may not interpret insurance documents that are not ambiguous.[86] Sullivan fails to allege facts to support the inference that Decedent intended to change her beneficiaries on the Policies, or that she took any steps to comply with the Policies' requirements for changing beneficiaries.[87] Sullivan's conclusory allegations lack sufficient factual support to infer that Decedent intended to change her beneficiaries or that different persons hold beneficial interest and legal title in the Proceeds. Accordingly, I find there are no reasonably inferable facts under which Sullivan can prevail on her equitable claim to support the imposition of a resulting trust.[88]

---

[86] *In re Estate of Willin*, 1996 WL 757214, at *2 (Del. Ch. Dec. 9, 1996).

[87] D.I. 17, ¶¶ 77-78. The Policies state that a written request is required to change the insured's beneficiaries. D.I. 35, Ex. 3, at 89; Ex. 5, at 5. *See Shuttleworth v. Abramo*, 1992 WL 25756, at *3 (Del. Ch. Feb. 6, 1992) ("As a matter of law, a court would have given [someone other than the beneficiary designated in the policy] the proceeds of [the] policy only if [it had been proven] by clear and convincing evidence that [the insured] had substantially complied with the policy's requirements for changing the beneficiary."); *see generally Travelers Life & Annuity Co. v. Desderio*, 2007 WL 2063035, at *2 (Del. Ch. July 3, 2007).

[88] Sullivan argues that the question of the parties' intent cannot be resolved on a motion to dismiss, citing *Am. Tower Corp. v. Unity Commc'ns, Inc.*, 2010 WL 1077850, at *2 (Del.

Sullivan also argues that a constructive trust should be imposed on the Proceeds because Petitioner had a fiduciary duty to Decedent as her insurance agent and financial advisor to advise her that she could change her beneficiary designations on the Policies during the divorce, failed to do so and, as a consequence, Petitioner was unjustly enriched.[89] Sullivan has not provided a sufficient factual basis to infer that Petitioner's conduct was fraudulent, unfair or unconscionable, or that he had a duty, as Decedent's insurance agent and financial advisor, to tell her about the possibility of changing her life insurance beneficiary designations while their divorce was pending. It is undisputed that Petitioner removed Decedent as his life insurance beneficiary before he filed for divorce.[90]

It is possible that insurance agents may be found liable for negligence based upon the premise that a definite relationship exists between the parties and that relationship is "of such a character that social policy justifies the imposition of a

---

Super. Mar. 8, 2010), and *SPX Corp. v. Garda USA, Inc.,* 2012 WL 6841398, at *3-4 (Del. Super. Dec. 6, 2012). I find those cases inapposite to this case. Those cases focused on whether the contracts at issue were continuous or severable, considering the parties' intent, because the nature of the contract determined the accrual date and when the statute of limitations would begin to run. In contrast, here, the issue of Decedent's intent relates to the beneficiary designations on her life insurance policies, but those designations were unambiguous and cannot be interpreted.

[89] D.I. 17, ¶ 77; D.I. 39, at 16.

[90] D.I. 21, ¶ 77.

duty to act."[91]  One instance is when, under certain circumstances, an insurance agent fails to act on a life insurance application within a reasonable time.[92]  And, courts have considered whether the agent failed, through his own fault or neglect, to obtain insurance for the applicant.[93]   Even if Petitioner was Decedent's insurance agent, there are not sufficient facts pleaded to reasonably infer that Petitioner failed to act when he had a duty to do so, or that it was through his fault or neglect that she didn't know her beneficiary designations could have been altered during the divorce.  I find there are no reasonably inferable facts under which Sullivan can prevail on her equitable claim seeking to impose a constructive trust.

Accordingly, I recommend the Court dismiss Sullivan's equitable counterclaim, since it states only conclusory allegations unsupported by facts and fails as a matter of law.

## IV.   Conclusion

For the reasons set forth above, I recommend Petitioner's motion for judgment on the pleadings be granted, in part, and denied, in part.[94]  I recommend that the

---

[91] *Sciarra v. Minnesota Mut. Life Ins. Co.,* 1979 WL 193317, at *2 (Del. Super. Apr. 6, 1979).

[92] *Megee v. U. S. Fid. & Guar. Co.*, 391 A.2d 189, 192 (Del. 1978); *Pohorily v. Kennedy,* 269 A.2d 240 (Del. Super. 1970).

[93] *Sciarra,* 1979 WL 193317, at *3.

[94] With Petitioner's concession that Decedent had changed her domicile to Pennsylvania by the time of her death, the issues regarding Decedent's domicile at her death, and the

Court deny Petitioner's motion for judgment on the pleadings, in part, and declare that Petitioner is not entitled to the proceeds from Decedent's two individual Massachusetts Mutual Life Insurance Company policies, as a matter of law, and order him to pay those proceeds to Decedent's estate. I also recommend that the Court grant judgment for Petitioner, in part, and declare that Petitioner is entitled to receive the proceeds from the University of Delaware group life insurance policy through Metropolitan Life Insurance Company, as a matter of law. Further, I recommend the Court dismiss Sullivan's equitable counterclaim. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

---

proper jurisdiction for administration of her estate, are no longer in dispute and Petitioner's claims related to those issues are dismissed.