**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| HIGHLAND PIPELINE LEASING, LLC and SPECTRA ENERGY PARTNERS, LP, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. N20C-08-275 EMD CCLD |
| | ) | |
| v. | ) | |
| | ) | |
| MAGELLAN PIPELINE COMPANY, L.P., | ) ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 12, 2021
Decided: April 6, 2021

*Upon Defendant Magellan Pipeline Company L.P.'s Motion to Stay*
***GRANTED***

Raymond J. DiCamillo, Esquire, Tyler E. Cragg, Esquire, Richards, Layton and Finger, P.A. Wilmington, Delaware; *Attorneys for Plaintiffs Highland Pipeline Leasing, LLC and Spectra Energy Partners, LP.*

Thomas W. Briggs, Jr., Esquire, Zi-Xiang Shen, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware; John D. Russell, Esquire, Justin A. Lollman, Esquire, GableGotwals, Tulsa, Oklahoma; *Attorneys for the Defendant Magellan Pipeline Company, L.P.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the Court. The disputes in this civil action involve pipeline maintenance costs under a lease agreement (the "Lease"). Plaintiffs Highland Pipeline Leasing LLC ("Highland") and Spectra Energy Partners, LP ("Spectra") (collectively "Plaintiffs") allege that Defendant Magellan Pipeline Company L.P. ("Magellan") is solely responsible for certain repair costs associated with a pipeline leased by Magellan from Highland under the Lease. Plaintiffs seek declarations that:

(i) Highland has not breached the Lease; and (ii) Spectra has no current obligation owed under its guaranty of the Lease.

Magellan filed its Defendant's Motion to Stay (with Certificate of Service) (the "Motion") on November 2, 2020.[1] Plaintiffs opposed the Motion. The Court held a hearing on the Motion on March 1, 2021.[2] At the conclusion of the hearing, the Court did not rule on the Motion. The Court stated that it would act on the Motion once the District Court of Tulsa County for the State of Oklahoma (the "Oklahoma Court"), in a parallel Oklahoma lawsuit (the "Oklahoma Action"), ruled on Spectra's personal jurisdiction challenge.

The Oklahoma Court denied Spectra's motion to dismiss on March 12, 2021. This is the Court's decision on the Motion. For the reasons set forth more fully below, the Motion is **GRANTED**. The Court finds that the Oklahoma Action is first-filed, filed in a court—i.e., the Oklahoma Court—capable of doing prompt and complete justice, and involves the same parties and issues. The Court, therefore, will stay this civil action under *McWane*.

## II.    RELEVANT FACTS

Under the Lease, Magellan leased a 158-mile pipeline in Arkansas (the "Ozark Line") from Highland.[3] The parties executed the Lease on May 16, 2020.[4] Texas law governs the Lease.[5] After executing the Lease, Magellan took possession of the Ozark Line and converted the pipeline to transport liquid petroleum.[6]

---

[1] D.I. No. 6.
[2] D.I. No. 20.
[3] Compl. ¶ 1.
[4] *Id*. ¶ 20.
[5] *Id*., Ex. A ("Lease") § 14.7.
[6] *Id*. ¶ 26.

## A. THE PARTIES' REPAIR OBLIGATIONS UNDER THE LEASE

Lease Section 3.1(a) provides that Magellan is solely responsible for costs arising from the operation and maintenance of the Ozark Line. Lease Section 3.1(a) specifically states:

> Magellan shall be solely responsible for the operation, maintenance (which shall include, without limitation, pipeline and related facility maintenance and maintaining the Rights of Way and clearing the Rights of Way, maintaining cathodic protection for the Ozark Line, preventing damage from parties working near to or crossing the Rights of Way, and preventing any encroachments from being constructed upon the Rights of Way), repair and protection of the Ozark Line (at its sole expense except as to encroachments existing as of the Effective Date or as otherwise provided in Section 3.1(f)) and will take an shall operate, maintain, repair and protect the Ozark Line in accordance with all Applicable Law and prudent operating and maintenance practices…[7]

Lease Section 3.1(a) is subject to an exception under Lease Section 3.1(g). Lease Section 3.1(g) requires that the Parties share costs necessary to maintain commercial service. Lease Section 3.1(g) states:

> From the Rent Commencement Date to the end of the Initial Term and any Extension Term, to the extent not covered by proceeds from insurance that Magellan is required to maintain under this Lease, the Parties shall share equally in all costs to repair the Ozark Line to maintain commercial service unless such repairs are ongoing operating maintenance activities which are Magellan's sole responsibility pursuant to [Sections 3.1(a) and (b)] hereof; provided, if any such repair is required due to the failure of Magellan to comply with the other terms of this Lease, then Magellan shall be responsible for 100% of the costs associated with such repair.[8]

Finally, Lease Section 6.2 provides that Magellan must pay to repair and restore the Ozark Line during the Lease's term. Lease Section 6.2 declares:

> If any portion of the Ozark Line is damaged or destroyed, whether in whole or in part, during the Lease Term, whether by fire or other type of casualty or otherwise, unless Highland agrees otherwise Magellan agrees to repair and restore the Ozark Line at Magellan's sole cost and expense as soon as practicable, such repair to be carried out in accordance with North American pipeline industry standards and in compliance with Applicable Law.[9]

---

[7] Lease § 3.1(a).
[8] Lease § 3.1(g).
[9] Lease § 6.2.

3

Spectra guaranteed Highland's Lease obligations through the Performance Guaranty ("Guaranty").[10]

## B. MAGELLAN DEMANDS HIGHLAND PAY FOR REPAIRS UNDER SECTION 3.1(G).

In August 2017, Magellan reported to Highland that it found dark particulates ("Black Powder") in refined petroleum products arriving at Magellan's Little Rock facility.[11] Magellan contends that the Ozark Line cause the Black Powder.[12] Magellan initially attempted to clean the Ozark Line.[13] After that failed, Magellan decided that the Black Powder could only be removed through a newly installed filtration system at its Little Rock facility.[14] Magellan claimed that the filtration system was a repair necessary to maintain commercial service under Lease Section 3.1(g) of the Lease.[15] As such, Magellan demanded that Highland pay half the installation costs.[16] On November 5, 2019, Magellan invoiced Highland for half the costs allegedly associated with removing the Black Powder.[17] Highland declined to pay this invoice or any costs associated with removing the Black Powder.[18]

In March 2020, significant rainfall caused a hillside to destabilize and shift underneath a section of the Ozark Line (the "Geoslip").[19] Magellan installed a temporary bypass of the affected section of the Ozark Line.[20] Magellan notified Highland of the Geoslip and bypass on or about April 1, 2020.[21] Magellan also informed Highland that it would replace the bypass with

---

[10] Compl. ¶ 25.
[11] Id. ¶¶ 2, 27.
[12] Id. ¶¶ 2, 27.
[13] Id. ¶ 28.
[14] Id. ¶ 28.
[15] Id. ¶ 30.
[16] Id. ¶ 30.
[17] Id. ¶ 31.
[18] Id. ¶ 32.
[19] Id. ¶¶ 3, 33.
[20] Id. ¶ 34.
[21] Id. ¶ 35.

a new permanent pipe.[22]  Magellan claimed the bypass and replacement pipes were necessary to restore the Ozark Line to commercial service and demanded that Highland pay half the costs of the bypass and new permanent pipe under Section 3.1(g) of the Lease.[23]  Highland declined to pay Magellan for the costs incurred by the Geoslip.[24]

## C. THE OKLAHOMA ACTION

On April 22, 2020, Magellan initiated the Oklahoma Action, suing Highland for breach of the Lease.[25]  On June 18, 2020, Highland moved to dismiss the Oklahoma Action for lack of personal jurisdiction.[26]  On August 18, 2020, the Oklahoma Court denied Highland's motion to dismiss for lack of personal jurisdiction.[27]

On July 20, 2020, Magellan mailed Spectra a notice alleging that Highland defaulted on its performance obligations under the Lease.[28]  On August 27, 2020, Spectra denied that it had any obligation to Magellan under the Guaranty.[29]

Magellan sought a writ of prohibition or mandamus from the Oklahoma Supreme Court to prohibit the Oklahoma Court from exercising personal jurisdiction over Highland in the Oklahoma Action.[30]  On November 9, 2020, the Oklahoma Supreme Court denied Highland's petition.[31]

On November 10, 2020, the Oklahoma Court granted Magellan's motion to amend its complaint to add Spectra as a defendant in the Oklahoma Action.[32]  Magellan's amended

---

[22] *Id.* ¶ 36.
[23] *Id.* ¶ 37.
[24] *Id.* ¶ 38.
[25] *Id.* ¶ 39; Def.'s Mot. to Stay, Exs. 1 – 8 (hereinafter "Def. Exs.") 1.
[26]  Compl. ¶ 40.
[27] *Id.* ¶ 41; Def. Ex. 3.
[28] Compl. ¶ 42.
[29] *Id.* ¶ 44.
[30] D.I. No. 8 (Letter for Judicial Review); D.I. No. 8 Ex. A.
[31] D.I. No. 8; D.I. No. 8, Ex. A.
[32] D.I. No. 8.

complaint in the Oklahoma Action alleges that Highland breached the Lease and Spectra is liable to Magellan under the Guaranty.[33] On March 12, 2021, the Oklahoma Court denied Spectra's Motion to Dismiss, holding that Oklahoma Court can exercise personal jurisdiction over Spectra.[34]

### D. PROCEDURAL POSTURE

On September 9, 2020, Highland and Spectra filed the Complaint with the Court seeking declaratory judgments that; (i) Highland need not share costs associated with the Black Powder and Geoslip; and (ii) Spectra has no obligations under the Guaranty.[35]

On November 2, 2020, Magellan filed the Motion to stay this action.[36]

## III.    PARTIES' CONTENTIONS

### A. MAGELLAN'S CONTENTIONS

Magellan moves to stay this action. Magellan argues that the Court should stay the action under *McWane* because the Oklahoma Action is first-filed, in a court capable of doing prompt and complete justice and involves the same parties and issues.

### B. PLAINTIFFS' CONTENTIONS

Plaintiffs oppose the motion. Plaintiffs argue that the Oklahoma Action initially only named Highland as a defendant, and therefore this action was the first-filed action involving all parties. Plaintiffs also argue that Oklahoma is an inappropriate forum because it does not have personal jurisdiction over Highland or Spectra.

---

[33] Pl.'s Opp. to Def's. Mot. to Stay, Exs. A – F (herein after "Pls'. Ex.") Ex. F ¶¶ 8, 34.
[34] D.I. No. 21; D.I. No. 21 Ex. 1.
[35] D.I. No. 1; Compl. ¶¶ 61, 65.
[36] D.I. 6.

## IV.    STANDARD OF REVIEW

A "[m]otion to [s]tay is not unlike a motion to dismiss based upon the doctrine of *forum non conveniens*."[37]  *Forum non conveniens* falls under Civil Rule 12(b)(3) for improper venue.[38] The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to resolve dispute issue of material facts or decide the merits of the case.[39]  In reviewing a motion to dismiss, the Court must assume as true all the facts pled in the complaint and view those facts and all reasonable inferences drawn from them in the light most favorable to the plaintiff.[40] However, the Court "is not shackled to the plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[41]  The Court can "grant a dismissal motion before the commencement of discovery on the basis of affidavits and documentary evidence if the plaintiff cannot make out a *prima facie* case in support of its position."[42]

## V.    DISCUSSION

### A.  *FORUM NON CONVENIENS* LEGAL FRAMEWORK

Dismissal under *forum non conveniens* is drastic relief and only warranted in "rare cases."[43]  To avoid the plaintiff's choice of forum, a defendant must show "with particularity that it will be subjected to overwhelming hardship and inconvenience if required to litigate in Delaware."[44]  A defendant must show that the inconvenience and hardship are so profound that they "overwhelm" the plaintiff's choice of forum.[45]  It is intended as "a stringent standard that

---

[37] *Nat'l Union Fire. Ins. Co. of Pittsburgh, Pa. v. RLC Corp.*, 449 A.2d 257, 260 (Del. Super. 1982).
[38] *See Ethica Corp. Finance S.r.L v. Dana Inc.*, 2018 WL 3954205, at *4 (Del. Super Aug 16, 2018).
[39] *Belfint, Lyons and Shuman v. Potts Welding & Boiler Repair, Co., Inc.,* 2006 WL 2788188 at *2 (Del. Super. Aug. 28, 2006).
[40] *Anglo American Sec. Fund, L.P. v. S.R. Global Intern. Fund, L.P.*, 829 A.2d 143, 148-9 (Del. Ch. Aug. 4, 2003).
[41] *Halpern Eye Assocs. P.A. v. E.A. Crowell & Assocs., Inc.*, 2007 WL 3231617 (Del. Com. Pl. Sept. 18, 2007) (Citation and internal quotations omitted).
[42] *Simon v. Navellier Series Fund*, 2000 WL 1597890, at *4 (Del. Ch. Oct. 19, 2000).
[43] *See Ison v. E.I. DuPont de Nemours and Co., Inc.*, 729 A.2d 832, 842 (Del. 1999).
[44] *Pipal Tech Ventures Private Ltd. V. MoEngage, Inc.*, 2015 WL 9257869, at *5 (Del. Ch. Dec. 17, 2015).
[45] *Id* at *10.

holds defendants who seek to deprive of a plaintiff of her chosen forum to an appropriately high burden."[46]

When determining whether a suit should be stayed or dismissed for *forum non conveniens*, Delaware applies different standards depending on the circumstance.[47] If two cases are filed contemporaneously, the Delaware case is filed first or there is no other pending action, the Court examines the motion under the traditional *forum non conveniens* framework, applying the factors set forth in *Cryo-Maid* under an "overwhelming hardship" standard.[48] But, if the foreign action is first-filed, the Court will conduct an analysis under *McWane* three-factor test.[49]

### B.  THE OKLAHOMA ACTION IS FIRST-FILED.

The Court must determine if (1) the parties and (2) the claims are "substantially similar to those raised in any" of the other pending foreign action to determine if that action is first-filed.[50] "The captions need not be exact replicas, nor must the counts in each complaint be identical."[51] What is important is that the same parties are involved in each of the disputes and that the issues "arise out of a common nucleus of operative facts."[52] Parties are substantially the same under *McWane* where related entities are involved but not named in both actions.[53] Such an "exclusion is more a matter of form than substance."[54] Amending a case to include all relevant parties does not strip a case of first-filed status.[55]

---

[46] *Martinez v. E.I. DuPont de Nemours and Co., Inc.*, 86 A.3d 1102, 1105 (Del. 2014), *as revised* (Mar. 4, 2014).
[47] *See Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036 (Del. 2017).
[48] *See Ethica Corp. Finance S.r.L.*, 2018 WL 3954205, at *5 (Del. Super. Aug. 16, 2018).
[49] *See id.* (Citing *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).
[50] *Diedenhofen-Lennartz v. Diedenhofen*, 931 A.2d 439, 446 (Del. Ch. 2007).
[51] *Id.*
[52] *Id.*
[53] *See McQuaide v. McQuaide*, 2005 WL 1288523, at *4 (Del. Ch. May 24, 2005).
[54] *FWM Corp. v. VKK Corp.*, 1992 WL 87327, at *1 (Del. Ch. Apr. 28, 1992).
[55] *See Kurtin v. KRE, LLC*, 2005 WL 1200188, at *4 (Del. Ch. May 16, 2005) ("Where the substance of the original case remains unchanged… courts have viewed the filing of intervening suits in other jurisdictions as forum shopping and maintained the case's first-filed status").

The parties in both this action and the Oklahoma Action are identical. Magellan is the Oklahoma Action's plaintiff, and Highland and Spectra are the Oklahoma Action's defendants.[56] Highland and Spectra are this action's plaintiffs and Magellan is this action's defendant.

The issues are also identical. In the Oklahoma Action, Magellan alleges that Highland breached the Lease by refusing to share costs for the Black Powder and Geoslip repairs, and Spectra is liable for that breach under the Guaranty.[57] In this action, Plaintiffs seek declaratory judgments that Highland need not share costs of the Black Powder and Geoslip repairs under the Lease, and that Spectra has no obligations under the Guaranty.[58] Both actions require nearly identical determinations.

The Court finds that the parties and issues are identical. The Court also finds that Magellan filed the Oklahoma Action on April 22, 2020, before Highland and Spectra initiated this civil action on September 9, 2020. The Court holds that the Oklahoma Action is first-filed. Accordingly, the Court will apply the *McWane* three-factor test and not the *Cryo-Maid* factors.

## C. THE COURT WILL STAY THIS ACTION UNDER *MCWANE* BECAUSE THE OKLAHOMA COURT IS CAPABLE OF DOING PROMPT AND COMPLETE JUSTICE.

Under the *McWane* three-factor test, the Court considers whether (1) there is a prior action pending elsewhere; (2) in a court capable of doing prompt and complete justice; (3) involving the same parties and the same issues.[59] When all three criteria are met, there is "a strong preference for the litigation of a dispute in the forum in which the first action was filed."[60] Nevertheless, a Delaware court may decline to stay a case if "Delaware has too vested an

---

[56] Pls.' Ex. F (Magellan's Amend. Pet.)
[57] *Id.* ¶¶ 8, 34.
[58] Compl. ¶¶ 61, 65.
[59] *See LG Elecs., Inc. v. InterDigital Commc'ns, Inc.*, 114 A.3d 1246, 1252 (Del. 2015).
[60] *Id.* (Internal citations omitted).

interest" in the matter to turn away.[61] For example, a Delaware court may decline to stay a case if there is no clear evidence of proper service of process or litigation progress in the foreign forum.[62]

Here, there is a prior action pending in Oklahoma involving the same parties and the same issues. The remaining issue is whether the Oklahoma Court is capable of doing prompt and complete justice. Oklahoma district courts are courts of general jurisdiction that would afford parties "all the discovery, pretrial, and trial advantages they would have in the Superior Court of Delaware for a speedy, just, and complete disposition of the claims of both parties to the controversy."[63]

Plaintiffs argue that the Oklahoma Court is incapable of doing prompt and complete justice because Oklahoma does not have jurisdiction over Highland and Spectra. The Oklahoma Court, however, already ruled that it may exercise personal jurisdiction over both Highland and Spectra.[64] The Oklahoma Supreme Court denied Highland's petition for writ of prohibition or mandamus to prohibit the Oklahoma Court from exercising personal jurisdiction over Highland.[65] Finally, Spectra informed the Court that it will not seek interlocutory appeal of the Oklahoma Court's ruling on personal jurisdiction.[66]

Delaware courts will not decide upon another state's behalf whether that state can exercise personal jurisdiction over a party.[67] As such, the Court finds that the Oklahoma Court is a court capable of doing prompt and complete justice.

---

[61] *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014, at *6 (Del. Ch. Jul. 1, 1996).
[62] *See id.* (Holding that only Delaware was capable of doing prompt and complete justice when there was no evidence of proper service of process or progress in the litigation in the foreign court).
[63] *McWane*, 263 A.2d at 283 (Del. 1970).
[64] Def. Ex. 3; D.I. No. 21; D.I. No. 21 Ex. 1.
[65] D.I. No. 8; D.I. No. 8 Ex. A.
[66] D.I. No. 23.
[67] *See Citrin Holdings LLC v. Cullen 130 LLC*, 2008 WL 241615, at *4 (Del. Ch. Jan. 17, 2008) ("A mere challenge to personal jurisdiction, however, does not demonstrate that the Texas court will be unable to perform the necessary

There are no facts indicating that Delaware's interests in the case are so vested that the Court cannot turn this case away. Although all parties are Delaware entities, the Ozark Line is in Arkansas.[68] Moreover, the Plaintiffs' principal places of business are in Texas, Magellan's principal place of business is Oklahoma, and Texas law governs the Lease.[69] Nothing indicates that the Court should contravene Delaware's "strong policy against… forum shopping to frustrate" Magellan's right to choose the jurisdiction in which to bring the action.[70]

The Oklahoma Action is first filed, in a court capable of doing prompt and complete justice and involves the same parties and issues. The Court also finds that there are no reasons otherwise to maintain the action. Therefore, the Court will stay this action under *McWane*.

## VI. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion. The Court will stay proceedings in this civil action until further notification from the parties.

Dated: April 6, 2021
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

function…. Should personal jurisdiction be resolved adversely to [Defendant], the question of a stay may be revisited").
[68] Compl. ¶ 1.
[69] *Id.* ¶¶ 7-9.
[70] *NRG Barriers, Inc.*, 1996 WL 377014, at *6 (Del. Ch. Aug. 4, 2017).

11